Civil service retirement benefits, 5 U.S.C. 729, 2265;

Longshoremen's and Harbor Workers' Compensation Act death and disability benefits, 33 U.S.C. 916;

Railroad Retirement Act annuities and pensions, 45 U.S.C. 228(L);

Veterans benefits, 45 U.S.C. 352(E);

Special pensions paid to winners of the Congressional Medal of Honor, 38 U.S.C. 3101; and

Federal homestead lands on debts contracted before issuance of the patent, 43 U.S.C. 175.

S.Rep. No. 989, 95th Cong., 2d Sess. 75, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5861; H.Rep. No. 595, 95th Cong., 2d Sess. 360 (1977), reprinted in 1978 U.S.Code Cong. & Ad.News 5963, 6316. The legislative history provides no further indication of the intended scope of this provision.

While the above list was not meant to be exclusive, we find the failure of Congress to include ERISA plan benefits probative of Congressional intent that ERISA was not a "Federal law" upon which a § 522(b)(2)(A) exemption could be based. See In re Goff, 706 F.2d at 585. Furthermore, although the provisions of some of the statutes on the list creating a federal exemption are similar to the anti-alienation provision of ERISA, there is a conceptual distinction between the property exempted by the listed laws and the property covered by ERISA. The pensions, wages, benefits and payments included in the illustrative list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems. We thus conclude, as did the Fifth Circuit, id. at 586, that Congress did not intend to include ERISA plans within the other "Federal law" exemption of § 522. Contra In re Hinshaw, 23 B.R. 233.

Accordingly, the order of the bankruptcy court is affirmed.

Jack GARNER, d/b/a Discount Records and Peaches Records and Tapes; Cedric Neel and Jane Neel, d/b/a The Dream Merchant; Hannah Dampier, d/b/a The Hot Springy Dingy; Steve Miller, d/b/a The Turquoise Cove; The Record Rack, Inc., Pat Bristol, d/b/a The Funky Candle; Dale Hulsey, d/b/a The Funky Candle No. II; Joe Frawley, d/b/a Armadillia's Hand; Jerry Hearn; Carroll Dee Bland; Adams Apple Distribution Co., and Music City Incense, Inc., Appellants,

v.

Frank WHITE, In His Official Capacity As Governor of The State of Arkansas; Steve Clark, In His Official Capacity As Attorney General of the State of Arkansas; Wilbur C. "Dub" Bentley, In His Official Capacity As Prosecuting Attorney, Sixth Judicial District; Kim Smith, In His Official Capacity As Prosecuting Attorney, Fourth Judicial District; Walter Wright, In His Official Capacity As Prosecuting Attorney, Eleventh Judicial District; Ron Fields, In His Capacity As Prosecuting Attorney, Twelfth Judicial District, All In The State of Arkansas, Appellees.

No. 82–1864.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1983.

Decided Jan. 25, 1984.

R. David Lewis, argued, A. Wayne Davis, Little Rock, Ark., for appellants.

Steve Clark, Atty. Gen., Mary B. Stallcup, Asst. Atty. Gen., Little Rock, Ark., for appellees.

Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and WANGELIN, District Judge.*

JOHN R. GIBSON, Circuit Judge.

The issue before us is the constitutionality of two Arkansas drug paraphernalia statutes.

In February, 1981, Arkansas enacted Act 78 which criminalized the possession, use, sale and manufacture of drug paraphernalia. Ark.Stat.Ann. §§ 82–2601(y), 2619(c), 2629(i) (1981). Retailers selling smoking devices and other objects potentially embraced by Act 78 brought a pre-enforcement facial challenge principally alleging that the Act was unconstitutionally vague and overbroad. The district court [1] granted a preliminary injunction in anticipation of this court's decision in *The Casbah, Inc. v. Thone,* 651 F.2d 551 (8th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982), a case presenting a similar challenge to Nebraska's drug paraphernalia statute. In June, 1981, a second Arkansas statute, Act 946, became effective. Ark.Stat.Ann. § 82–2644 (1981). It established criminal penalties for operating a drug paraphernalia business. Appellants filed an amended complaint alleging that Act 946 was also vague and overbroad. The district court expanded the preliminary injunction to include Act 946. Following our decision upholding the constitutionality of the Nebraska statute in *The Casbah, supra,* and the similar result reached by the Supreme Court with respect to a village drug paraphernalia ordinance in *Village of Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the district court granted the defendants' motion for summary judgment and dissolved the preliminary injunction. On appeal, appellants reassert their claim that both Acts are unconstitutionally vague and overbroad. We affirm the district court's decision.

I.

Before examining the specific provisions of Acts 78 and 946, we outline the guiding principles of the overbreadth and vagueness doctrines.

---

* The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

1. The Honorable William R. Overton, United States District Judge for the Eastern District of Arkansas.

The overbreadth doctrine permits litigants to challenge a law's facial validity on the ground that it unconstitutionally restricts the first amendment rights of third parties not before the court. *Schaumburg v. Citizens for Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). The justification for this exception to the "traditional rules governing constitutional adjudication" is a "judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma,* 413 U.S. 601, 610–12, 93 S.Ct. 2908, 2914–16, 37 L.Ed.2d 830 (1973). The applicability of the overbreadth doctrine depends in part on whether commercial or noncommercial speech is involved. A statute is unconstitutionally overbroad only if it reaches a "substantial amount" of noncommercial speech. *Flipside,* 455 U.S. at 494, 102 S.Ct. at 1191. The overbreadth doctrine is inapplicable to commercial speech— speech which does "no more than propose a commercial transaction," *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 385, 93 S.Ct. 2553, 2558, 37 L.Ed.2d 669 (1973), or that "relate[s] solely to the economic interests of the speaker and its audience," *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 561, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980). The overbreadth doctrine does not extend to commercial speech because the profit motive is thought to be sufficiently compelling to enable such speech to withstand the chilling effect of an overbroad statute. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 771 n. 24, 96 S.Ct. 1817, 1830 n. 24, 48 L.Ed.2d 346 (1976).

A law is void for vagueness if it lacks "ascertainable standards of guilt," *Winters v. New York,* 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948), such that "men of common intelligence must necessarily guess at its meaning and differ as to its application," *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Vague laws offend due process because they violate the two essential values of fair warning and nondiscriminatory enforcement:

> First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972) (footnotes omitted). A person whose actions are clearly proscribed by a statute cannot assert its potential vagueness as applied to other persons or circumstances unless the law restricts constitutionally protected conduct.[2] *Flipside,* 455 U.S. at 495, 102 S.Ct. at 1192; *United States v. Kirk,* 534 F.2d 1262 (8th Cir.1976), *cert. denied,* 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977) (citing *United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975)). The law must be such that "*no* standard of conduct is specified at all," *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971) (emphasis added), and is therefore "impermissibly vague in all of its applications," *Flipside,* 455 U.S. at 497, 102 S.Ct. at 1193.

---

**2.** *See, e.g., Kolender v. Lawson,* —— U.S. ——, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (criminal statute requiring loiterers to present "credible and reliable" identification and account for their presence on demand by a police officer held facially vague despite being clearly applicable to the challenger's conduct because of the "potential for arbitrarily suppressing First Amendment liberties and constitutional rights to freedom of movement").

In a vagueness challenge, both the degree of clarity required and the relative importance of fair warning and discriminatory enforcement depend on the nature of the law in question. Laws regulating business behavior are held to a lesser standard of definiteness because businesses "can be expected to consult relevant legislation in advance of action." *Flipside,* 455 U.S. at 498, 102 S.Ct. at 1193 (footnote omitted). Consequently, the prospect of discriminatory enforcement of such a law is especially speculative in a pre-enforcement challenge, and therefore "the principle inquiry is whether the law affords fair warning of what is proscribed." *Id.* at 503, 102 S.Ct. at 1196. Greater specificity is required of laws imposing criminal penalties and those infringing on constitutionally protected rights. *Id.* at 498–99, 102 S.Ct. at 1193–94. In addition, a mens rea element may mitigate vagueness by insuring that those acting in good faith are not swept within a law's broad or ambiguous language. *Id.; Boyce Motor Lines v. United States,* 342 U.S. 337, 342, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952).

These principles must be applied to Acts 78 and 946 to determine the required degree of specificity. Both Acts regulate business behavior and impose criminal sanctions and, as determined in section II, *infra,* neither implicates constitutionally protected conduct. The *Flipside* ordinance was similarly situated; it applied to retail drug paraphernalia businesses and, although violations were punishable with civil fines, was labeled "quasi-criminal" due to the stigma of being branded a drug paraphernalia seller. *Flipside,* 455 U.S. at 499 & n. 16, 102 S.Ct. at 1194 & n. 16. One crucial difference, however, is that violations of Acts 78 and 946 are felonies punishable by imprisonment.[3] For this reason, we conclude that both Acts must satisfy a stricter test of specificity than that applied in *Flipside.* At the same time, we recognize that regardless of the severity of a law's criminal sanctions, a law regulating business behavior which does not restrict constitutionally protected conduct is not void for vagueness if it is sufficiently clear as applied to the conduct of the complaining party. *Id.* at 500, 102 S.Ct. at 1194.

## II.

Act 78[4] defines drug paraphernalia as "all equipment, products and materials of any kind which are used, intended for use, or designed for use" with controlled substances. Following this definition is a list of twelve examples. The last example in the list is the all-inclusive "objects used, intended for use, or designed for use" with marijuana, hashish or cocaine, followed by thirteen examples of such objects. The Act then lists fourteen relevant factors which should be considered in determining whether an object is drug paraphernalia. A violation of Act 78 occurs when a person (1) uses drug paraphernalia with controlled substances or (2) possesses drug paraphernalia with the intent to use it with controlled substances. Act 78 can also be violated when a person, knowing or under circumstances where one reasonably should know that it will be used with controlled substances, (3) delivers drug paraphernalia; (4) possesses drug paraphernalia with the intent to deliver; or (5) manufactures drug paraphernalia with the intent to deliver. The Act prohibits a person from placing advertisements in a publication which that person knows or should know are designed to promote the sale of drug paraphernalia. The Act also provides for the seizure and forfeiture of all drug paraphernalia.

Act 78 is virtually identical to the Model Drug Paraphernalia Act, which has now

---

3. Violations of the *Flipside* ordinance result in fines of at least $10 but not more than $500, with each day that a violation continues constituting a separate offense. Violations of Act 78 are punishable by 3–10 years imprisonment, with the delivery of drug paraphernalia to a minor punishable by 5–20 years. Violations of Act 946 result in imprisonment for up to 1 year (first offense), 6 years (second offense), or between 3–10 years (third and subsequent offenses).

4. The text of Act 78 is set forth in the Appendix.

been upheld by this circuit in *The Casbah, Inc., supra,* and in every other circuit[5] considering its constitutionality. First amendment challenges to the Model Act were based on its general prohibition of drug paraphernalia and drug paraphernalia advertising, the use of speech-related factors to determine if a particular object was drug paraphernalia, and the provisions allowing for the seizure and forfeiture of drug-related books and literature. These claims were rejected on the grounds that only lesser-protected commercial speech was involved, *e.g., Camille Corp. v. Phares,* 705 F.2d 223 (7th Cir.1983), because the only speech implicated was that proposing an illegal activity which could be regulated or banned entirely, *e.g., Stoianoff v. Montana,* 695 F.2d 1214, 1219 (9th Cir.1983), and because any noncommercial speech was only incidentally restricted, *e.g., Weiler v. Carpenter,* 695 F.2d 1348 (10th Cir.1982).

The Model Act was challenged as unconstitutionally vague because it was alleged to encompass both multi-purpose items with drug-related and legitimate uses and innocent items adaptable to drug use. So interpreted, violations could be established by transferring a purchaser's intent to use an innocent object with prohibited drugs to an unknowing seller. It was also alleged that this lack of fair notice would lead to discriminatory enforcement against those practicing alternative lifestyles. Courts rejected these claims by interpreting the Model Act's definition of drug paraphernalia to be limited to those items which the *accused intended* for use with illegal drugs. This interpretation insured that the seller had fair notice of what objects were prohibited and thereby eliminated the possibility of prosecutions based on transferred intent. *E.g., Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213 (11th Cir.1982). Discriminatory enforcement claims were rejected on the ground that the examples and relevant factors included in the Model Act as useful in identifying drug paraphernalia provided sufficient guidance for authorities to apply the Act in a nonarbitrary fashion, *e.g., General Stores v. Bingaman,* 695 F.2d 502 (10th Cir.1982), and because speculation as to discriminatory enforcement is insufficient to facially void a law which regulates business behavior, *e.g., Kansas Retail Trade Coop. v. Stephan,* 695 F.2d 1343 (10th Cir.1982).

Recognizing that the facial validity of the Model Act has been established, appellants raise two arguments in an attempt to distinguish Act 78 from prior decisions. Their first claim is that Act 78 is overbroad[6] because it prevents persons from utilizing the expressions imprinted on, or

---

**5.** *Camille Corp. v. Phares,* 705 F.2d 223 (7th Cir.1983); *Stoianoff v. Montana,* 695 F.2d 1214, 1219 (9th Cir.1983); *Weiler v. Carpenter,* 695 F.2d 1348 (10th Cir.1982); *Kansas Retail Trade Coop. v. Stephan,* 695 F.2d 1343 (10th Cir. 1982); *General Stores, Inc. v. Bingaman,* 695 F.2d 502 (10th Cir.1982); *Tobacco Accessories and Novelty Craftsmen Merchants Ass'n v. Treen,* 681 F.2d 378 (5th Cir.1982); *Levas and Levas v. Village of Antioch,* 684 F.2d 446 (7th Cir.1982); *New England Accessories Trade Ass'n, Inc. v. City of Nashua,* 679 F.2d 1 (1st Cir.1982); *Florida Businessmen for Free Enterprise v. City of Hollywood,* 673 F.2d 1213 (11th Cir.1982). The only decision holding Model Act legislation unconstitutional was twice vacated and ultimately upheld on remand. *Record Revolution No. 6 v. City of Parma,* 638 F.2d 916 (6th Cir.1980), *vacated and remanded,* 451 U.S. 1013, 101 S.Ct. 2998, 69 L.Ed.2d 384 (1981), *vacated and remanded,* 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982), *upheld on remand,* 709 F.2d 534 (1983). In addition, drug paraphernalia statutes different from the Model Act have also been upheld. *Flipside, supra; Nova Records, Inc. v. Sendak,* 706 F.2d 782 (7th Cir.1983); *High Ol' Times, Inc. v. Busbee,* 673 F.2d 1225 (11th Cir.1982); *Hejira Corp. v. MacFarlane,* 660 F.2d 1356 (10th Cir. 1981). The two circuit court decisions striking down non-Model Act legislation are clearly distinguishable from Act 78. *See Record Head Corp. v. Sachen,* 682 F.2d 672 (7th Cir.1982) (ordinance interpreted to lack a mens rea element and factors listed as useful in identifying drug instruments held to be of doubtful relevance); *Geiger v. City of Eagan,* 618 F.2d 26 (8th Cir.1980) (ordinance lacked mens rea element, applied equally to tobacco smoking accessories, and contained vague characteristics purporting but failing to distinguish legal from illegal pipes).

**6.** Appellants assert only an overbreadth challenge to Act 78. They do not claim that the Act violates their personal first amendment rights.

the symbolic speech represented by the use of, drug paraphernalia. Appellants claim that these expressions and symbolic speech, distinct from statements or logos used for marketing purposes, are constitutionally protected noncommercial speech because they represent the owner's views on the draft, materialism, obscenity, war and other issues.

*Flipside* addressed the appellants' argument:

> Flipside also argues that because the presence of drug-related designs, logos or slogans on paraphernalia may trigger enforcement, the ordinance infringes "protected symbolic speech."
>
> These arguments do not long detain us. . . . Although drug-related designs or names on cigarette papers may subject those items to regulation, the village does not restrict speech as such, but simply regulates the commercial marketing of items that the labels reveal may be used for an illicit purpose. The scope of the ordinance therefore does not embrace noncommercial speech.

*Flipside,* 455 U.S. at 496, 102 S.Ct. at 1192 (citations omitted). *See also Pennsylvania Accessories Trade Ass'n, Inc. v. Thornburgh,* 565 F.Supp. 1568, 1572 (M.D.Pa. 1983). Even if appellants succeed in drawing a distinction between the expressions concerning contemporary issues and the commercial marketing of items, Act 78 only incidentally affects such expressions and thus falls well short of the requisite "substantial" restriction. *Broadrick, supra.* Finally, to the extent that the use of drug paraphernalia represents symbolic speech—conduct designed to communicate an idea which includes nonspeech elements—Arkansas's interest in combatting drug abuse and related evils justifies regulation of that conduct even if protected speech is incidentally restricted. *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

■ Appellant's second claim is that discriminatory enforcement of Act 78 is a certainty, rather than simply the hypothetical possibility presented in other drug paraphernalia cases. As evidence, appellants cite the record of a previous Arkansas case enjoining the operation of a Jacksonville drug paraphernalia ordinance. *Back Door Records v. City of Jacksonville,* 515 F.Supp. 857 (E.D.Ark.1981). In that case, local law enforcement authorities testified that they were unable to distinguish drug paraphernalia from innocent objects, and would therefore consider where the items were sold and whether the vendor conformed to a drug-users profile when enforcing the ordinance.

We cannot accept appellants' argument. First, past testimony in a case decided when drug paraphernalia legislation benefitted from little enforcement experience or judicial guidance does not guarantee discriminatory enforcement of Act 78 two years later. Second, the court in *Back Door Records* relied on what was described as the "pre-eminent authority" of the Sixth Circuit's decision in *Record Revolution No. 6, supra,* which held, *inter alia,* that the Model Act was susceptible to discriminatory enforcement because it failed to adequately distinguish drug paraphernalia from innocent items adaptable to drug use. Every circuit considering the issue has since interpreted the Model Act not to embrace innocent items, and therefore this basis for discriminatory enforcement no longer exists. In addition, the Sixth Circuit's decision has since been reversed on remand. Third, the *Flipside* decision makes it clear that, absent a law totally lacking in enforcement standards, the possibility that a law which regulates business behavior will be arbitrarily enforced "is of no due process significance unless the possibility ripens into a prosecution." *Flipside,* 455 U.S. at 503–04 n. 21, 102 S.Ct. at 1195–96 n. 21.

We therefore find unconvincing both claims raised by appellants in their attempt to distinguish this case from *The Casbah, Inc., supra,* and other decisions upholding the constitutionality of the Model Act. Consequently, Act 78 is sufficiently clear to provide appellants with fair notice that at least some items sold in their stores are prohibited. We thus follow our previous

decision in *The Casbah, Inc., supra,* and hold that Act 78 is not unconstitutionally overbroad and that it satisfies the more stringent vagueness test mandated by its criminal sanctions.

### III.

Act 946[7] prohibits the operation of an illegal drug paraphernalia business. Such a business is one that deals in "drug devices," which are defined as objects "usable for smoking marijuana, for smoking controlled substances defined as tetrahydrocannabinols, or for injecting or inhaling cocaine." This definition is then expanded by the same thirteen examples contained in Act 78 to define the all-inclusive "objects used, intended for use, or designed for use" with controlled substances. A violation of Act 946 occurs when a person conducts, finances, manages, supervises, directs or owns all or part of a business which regularly manufactures or sells objects which he knows, or has reason to know, are designed to be primarily useful as drug devices. The Act declares such businesses to be public nuisances, and authorizes county prosecutors or private citizens to bring *ex parte* actions to enjoin their operation. If supported by probable cause, the Act authorizes the search of any place where drug devices are "in any manner used, held or concealed" with the intent to engage in illegal drug paraphernalia business. The Act provides for the forfeiture of all drug devices.

Appellants assert that Act 946 is unconstitutionally overbroad and will be discriminatorily enforced for the same reasons asserted in relation to Act 78. For the reasons discussed in section II, *supra,* we reject these claims. Consequently, the only remaining issue is whether Act 946 provides fair notice of what conduct is prohibited.

Act 946 defines a drug device as "an object usable for [consuming illegal drugs]." This definition is virtually identical to the one held unconstitutional in *Geiger v. City of Eagan,* 618 F.2d 26 (8th Cir. 1980). That ordinance defined a drug-related device as "any pipe or other object suitable to be used for smoking." Act 946 is, however, distinguishable from Eagan's ordinance. To violate Act 946, the object not only must be "usable" with illegal drugs, but the person must (1) "know or have reason to know" that the object is (2) "designed to be primarily useful" as a drug device. The issue is whether these two phrases provide the additional degree of exactitude sufficient to satisfy due process.

The phrase "designed to be primarily useful" clearly narrows the scope of the Act. "Primarily useful" excludes from the definition of drug device both innocent items adaptable for drug use and multi-purpose items equally employable for legal and prohibited uses. *See Nova Records,* 706 F.2d at 789 (phrase "intends to be used primarily for" drug use construed to require illegal intent to predominate). *See also High Ol' Times, supra; Hejira Corp., supra.* "Designed" further limits the objects embraced by Act 946. "Designed for use," included in the Model Act and therefore extensively analyzed, was defined by the Supreme Court in *Flipside* as referring to the intent of the manufacturer or designer as embodied in the objective, structural characteristics of the object. *Flipside,* 455 U.S. at 501, 102 S.Ct. at 1194. So defined, the object must not only be predominantly useful with illegal drugs, but that purpose must be apparent to the accused through the physical characteristics of the object. This excludes from the scope of Act 946 innocuous objects covertly intended for drug use by the designer or manufacturer. Examined in the context of this limiting language, the record reveals that at least some items sold in appellants' businesses are covered by Act 946's definition of drug device.

The second phrase distinguishing Act 946 from Eagan's ordinance is that persons cannot be prosecuted unless they "know or have reason to know" that an object's design reveals it to be primarily useful with illegal drugs. A similar "reason to know" standard contained in the Model Act was

---

7. The text of Act 946 is set forth in the Appendix.

challenged as unconstitutionally vague. This challenge was based on the interpretation of the Model Act to proscribe all objects adaptable for drug use. Under this interpretation, a retailer could be convicted based on the purchaser's intent to use an innocent or multi-purpose object with illegal drugs, and therefore left "innocent sellers in the untenable posture of trying to divine the intentions of their buyer." *The Casbah, Inc.*, 651 F.2d at 561. It was thus alleged that such a standard permitted sellers to be prosecuted based on the constructive knowledge of what they should have known given the attendant circumstances of the purchaser's age, dress and mannerisms.

This reasoning does not apply to the "reason to know" standard contained in Act 946. First, Act 946 does not define drug device in terms of the purchaser's intent; the object must possess objective, structural characteristics which reveal that it is "designed to be primarily useful" with illegal drugs.[8] Second, defining drug devices in terms of what a person should have been aware of [9] is not unconstitutionally vague. Numerous

criminal statutes incorporating such standards have withstood constitutional attack.[10] See *The Casbah, Inc.*, 651 F.2d at 561 n. 13. Finally, Act 946 only prohibits the distribution of drug devices "in the regular course of business or as a continuing course of conduct." This requirement prevents Act 946 from being enforced against those committing isolated violations.

Support for our conclusion that Act 946 is sufficiently definite can be drawn by comparing it with the ordinance upheld in *Flipside*. The *Flipside* ordinance made unlawful the sale of objects "designed or marketed for use with illegal cannabis." The Supreme Court stated that this definition satisfied fair notice even "under the test appropriate to . . . a criminal law." *Flipside*, 455 U.S. at 500, 102 S.Ct. at 1194. Act 946 prohibits the distribution of objects "designed to be primarily useful" as an object usable with illegal drugs, with the additional requirement that the accused "know or have reason to know" that the object is so designed. If the *Flipside* definition would satisfy fair notice under the stringent test applied to criminal statutes, then Act 946,

---

**8.** Convicting persons based on what they should have known about the manufacturer's or designer's intent as revealed by the structural characteristics of a particular object does not present a problem of transferred intent. The intent of the manufacturer or designer is embodied in the object itself and is apparent to all who perceive it. All that is required is for persons to open their eyes to the "objective realities" of the items sold in their businesses. *The Casbah, Inc.*, 651 F.2d at 561. In contrast, a purchaser's intent is typically unascertainable, and therefore presents a true transferred intent problem.

**9.** Under Arkansas law, a person has reason to know about attendant circumstances when he or she "should be aware of a substantial and unjustifiable risk that the circumstances exist. . . ." Ark.Stat.Ann. § 41–203(4) (1977).

**10.** Distinct from the issue of whether "reason to know" is an unconstitutionally vague standard, we recognize, as indicated previously, that the mens rea element of knowledge, and perhaps to a lesser degree the element of reason to know, mitigates statutory vagueness by excluding from the law's scope those acting in good faith. *Boyce Motor Lines, supra; United States v. Ragen*, 314 U.S. 513, 524, 62 S.Ct. 374,

378, 86 L.Ed. 383 (1942). Furthermore, the "know or have reason to know" element is not a "circular" mens rea standard which simply requires that the accused willfully, purposefully or intentionally engage in conduct or cause a result "that is itself ambiguous." *Nova Records*, 706 F.2d at 789–90; *Levas and Levas*, 684 F.2d at 451; *Pennsylvania Accessories Trade Ass'n*, 565 F.Supp. at 1577. See W. LaFave & A. Scott, *Criminal Law*, § 11, 86–87 (1972) ("a person can willfully bring about certain results and yet be without fair warning that such conduct is proscribed.") See also *Screws v. United States*, 325 U.S. 91, 149–57, 65 S.Ct. 1031, 1058–61, 89 L.Ed. 1495 (1945) (plurality opinion) (Roberts, Frankfurter and Jackson, JJ., dissenting). This element requires the prosecution to prove that the accused knew or should have known of the very circumstance which appellants argue is unconstitutionally vague—whether or not a particular object is a drug device. In light of this requirement, appellants' claim is reduced to the assertion that Act 946 traps those acting in good faith by inadequately defining "drug device," even though persons cannot be convicted unless they were aware or should have been aware that an object's design revealed it to be such a device. This is reasoning to which we cannot subscribe.

by virtue of its additional specificity, must also be upheld.

Act 946 thus satisfies fair notice requirements. The "designed to be primarily useful" language excludes innocent objects and those equally adaptable for legal and prohibited uses, and Act 946 thereby embraces at least some of the items sold by appellants.

Consistent with our power to interpret statutes in ways which support a finding of constitutionality, *The Casbah, Inc.,* 651 F.2d at 557, we conclude that neither Act 78 nor Act 946 are unconstitutionally vague or overbroad. The judgment of the district court is affirmed.

## APPENDIX

### ACT 78

Ark.Stat.Ann. § 82–2601(y): The term "Drug Paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this Act (meaning the Controlled Substances Act of this State). It includes, but is not limited to:

(1) Kits used, intended for use, or designed for use in planting, propagating, cultivating, growing or harvesting of any species of plant which is a controlled substance or from which a controlled substance can be derived;

(2) Kits used, intended for use, or designed for use in manufacturing, compounding, converting, producing, processing, or preparing controlled substances;

(3) Isomerization devices used, intended for use, or designed for use in increasing the potency of any species of plant which is a controlled substance;

(4) Testing equipment used, intended for use, or designed for use in identifying, or in analyzing the strength, effectiveness or purity of controlled substances;

(5) Scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances;

(6) Diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, intended for use, or designed for use in cutting controlled substances;

(7) Separation gins and sifters use [sic], intended for use, or designed for use in removing twigs and seeds from, or in otherwise cleaning or refining, marihuana;

(8) Blenders, bowls, containers, spoons and mixing devices used, intended for use, or designed for use in compounding controlled substances;

(9) Capsules, ballons [balloons], envelopes and other containers used, intended for use, or designed for use in packaging small quantities of controlled substances;

(10) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances;

(11) Hypodermic syringes, needles and other objects used, intended for use, or designed for use in parenterally injecting controlled substances into the human body; and

(12) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marihuana, cocaine, hashish, or hashish oil into the human body, such as:

(a) Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(b) Water pipes;

(c) Carburetion tubes and devices;

(d) Smoking and carburetion masks;

(e) Roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;

(f) Miniature cocaine spoons, and cocaine vials;

(g) Chamber pipes;

(h) Carburetor pipes;

(i) Electric pipes;

(j) Air-driven pipes;

(k) Chillums;

(*l*) Bongs; and

(m) Ice pipes or chillers.

In determining whether an object is Drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following:

(1) Statements by an owner or by anyone in control of the object concerning its use;

(2) Prior convictions, if any, of an owner, or of anyone in control of the object, under any State or federal law relating to any controlled substance;

(3) The proximity of the object, in time and space, to a direct violation of this Act;

(4) The proximity of the object to controlled substances;

(5) The existence of any residue of controlled substances on the object;

(6) Direct or circumstantial evidence of the intent of an owner, or of anyone in control of the object, to deliver it to persons whom he knows, or should reasonably know, intend to use the object to facilitate a violation of this Act; the innocence of an owner, or of anyone in control of the object, as to a direct violation of this Act shall not prevent a finding that the object is intended for use, or designed for use as Drug paraphernalia;

(7) Instructions, oral or written, provided with the object concerning its use;

(8) Descriptive materials accompanying the object which explain or depict its use;

(9) National and local advertising concerning its use;

(10) The manner in which the object is displayed for sale;

(11) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(12) Direct or circumstantial evidence of the ratio of sales of the object(s) to the total sales of the business enterprise;

(13) The existence and scope of legitimate uses for the object in the community; and

(14) Expert testimony concerning its use.

§ 82–2619(c)(1): It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act. Any person who violates this section is guilty of a Class C felony.

(2) It is unlawful for any person to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this Act. Any person who violates this section is guilty of a Class C felony.

(3) Any person eighteen (18) years of age or over who violates (c)(2) immediately preceding by delivering drug paraphernalia to a person under eighteen (18) years of age who is at least three (3) years his junior is guilty of a Class B felony.

(4) It is unlawful for any person to place in any newspaper, magazine, handbill, or other publication any advertisement, knowing, or under circumstances where one reasonably should know, that the purpose of the advertisement [advertisement], in whole or in part, is to promote the sale of counterfeit substances or of objects designed or intended for use as drug paraphernalia. Any person who violates this section is guilty of a Class C felony.

§ 82–2629(i): All drug paraphernalia and counterfeit substances except in the possession or control of a practitioner in the course of professional practice and/or research shall be subject to civil seizure and forfeiture.

## ACT 946

Ark.Stat.Ann. § 82–2644(a): Any person who conducts, finances, manages, supervises, directs or owns all or part of an illegal drug paraphernalia business is guilty of a Class A misdemeanor for the first offense, a Class D felony for the second offense, and a Class C felony for third and subsequent offenses.

(b) A person violates subsection (a) of this section when:

(1) the person conducts, finances, manages, supervises, directs or owns all or part of a business which, in the regular course of business or as a continuing course of conduct, manufactures, sells, stores, possesses, gives away or furnishes objects designed to be primarily useful as drug devices, and

(2) The person knows or has reason to know that the design of such objects renders them primarily useful as drug devices.

(c) As used in this section, "drug device" means an object usable for smoking marijuana, for smoking controlled substances defined as tetrahydrocannabinols, or for ingesting or inhaling cocaine, and includes, but is not limited to:

(i) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(ii) Water pipes;

(iii) Carburetion tubes and devices;

(iv) Smoking and carburetion masks;

(v) Roach clips; meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(vi) Chamber pipes;

(vii) Carburetor pipes;

(viii) Electric pipes;

(ix) Air-driven pipes;

(x) Chillums; ·

(xi) Bongs;

(xii) Ice pipes or chillers; and

(xiii) Miniature cocaine spoons, and cocaine vials.

In any prosecution under this section, the question whether an object is a drug device shall be a question of fact.

(d) A place where drug devices are manufactured, sold, stored, possessed, given away or furnished in violation of this section shall be deemed a common or public nuisance. Conveyances or vehicles of any kind shall be deemed places within the meaning of this section and may be proceeded against under the provisions of subsection (e) of this section. A person who shall maintain, or shall aid or abet or knowingly be associated with others in maintaining such common or public nuisance, and judgment shall be given that such nuisance be abated or closed as a place for the manufacture, sale, storage, possession, giving away or furnishing of drug devices.

(e) The prosecuting attorney or a citizen of the county or municipality where a nuisance as defined in subsection (d) is located, may maintain a suit in the name of the state to abate and perpetually enjoin the same. Circuit courts shall have jurisdiction thereof. The injunction may be granted at the commencement of the suit and no bond shall be required if such action for injunction be brought by the prosecuting attorney. If such suit for injunction be brought or maintained by a citizen of the county or municipality where such nuisance is alleged to be located, then the court may require a bond as in other cases of injunction. On the finding that the material allegations of the complaint are true, the court or judge thereof in vacation shall order the injunction for such period of time as it or he may think proper, with the right to dissolve the injunction upon the application of the owner of the place, if a proper case is shown for such dissolution.

The continuance of the injunction as provided in this section may be ordered, al-

though the place complained of may not at the time of hearing be unlawfully used.

(f) If there be complaint on oath or affirmation supported by affidavit or affidavits setting forth the facts for such belief that drug devices are being manufactured, sold, kept, stored or in any manner held, used or concealed in a particular house or other place with intent to engage in illegal drug paraphernalia business in violation of law, a circuit court, or the judge thereof in vacation to whom such complaint is made, if satisfied that there is probable cause for such belief, shall issue a warrant to search such house or other place for such devices. Such warrants, except as herein otherwise provided, shall be issued, directed and executed in accordance with the laws of Arkansas pertaining to search warrants. Warrants issued under this section for the search of any trunk, grip or other article of baggage, for such devices, may be executed in any part of the state where the same are overtaken, and shall be made returnable before any circuit court, or the judge thereof in vacation, within whose jurisdiction such automobile, boat, conveyance, vehicle, trunk, grip or other article of baggage, or any of them, were transported or attempted to be transported.

An officer charged with the execution of a warrant issued under this section, may, whenever it is necessary, break open and enter a house, or other place herein described.

(g) Any property, including money, used in violation of the provisions of this section may be seized and forfeited to the state.