613 F.Supp. 739 (1985)
UNITED BLACK COMMUNITY FUND INC., Plaintiff,
v.
CITY OF ST. LOUIS, MISSOURI, et al., Defendants.
No. 85-1050 C (2).
United States District Court, E.D. Missouri, E.D.
June 26, 1985.
*740 *741 MacArthur Moten and Irene J. Smith, St. Louis, Mo., for plaintiff.
Francis M. Oates, Associate City Counselor, St. Louis, Mo., for defendants.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court following trial for a decision on the merits. Plaintiff seeks, inter alia, a permanent injunction prohibiting the City of St. Louis and the other named defendants from enforcing Joint Regulation No. 1 ("The Regulation"), promulgated by the Comptroller and the Director of Personnel for the City of St. Louis. The following memorandum constitutes this Court's Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52(a).
Plaintiff, the United Black Community Fund, Inc., is a Missouri not-for-profit corporation *742 exempt from Federal Income Tax under 26 U.S.C. § 501(c)(3). The Regulation at issue in this litigation governs payroll deductions of the City of St. Louis's employees. A charitable organization is eligible to receive funds from the City's employees through payroll deductions if, inter alia, "[t]he organization's administrative and fund-raising expenses do not exceed 25% of gross contributions." Plaintiff challenges the facial constitutional validity of the 25% administrative and fund-raising limitation. Plaintiff does not challenge any other provision of The Regulation as constitutionally infirm. The Court finds the City's workplace and its payroll deduction plan are nonpublic forums and the 25% administrative and fund-raising limitation reasonable. Judgment will be rendered in favor of defendant, and plaintiff's complaint dismissed with prejudice.

I
The defendant City of St. Louis is a municipal corporation of the State of Missouri existing by virtue of its charter and the Constitution of the State of Missouri. As a result of a settlement agreement entered into in prior litigation with the City, plaintiff has been permitted to solicit City employees for contributions and collect those contributions through payroll deductions in the same manner as the United Way of Greater St. Louis. Currently 1,116 City employees are contributing to plaintiff by means of payroll deductions. The City employees are motivated, in part, to contribute to plaintiff because the City has approved plaintiff for participation in its payroll deduction plan.
The linchpin on which plaintiff's challenge hangs is the nature of the forum regulated by the 25% administrative and fund-raising limitation. In the case at bar the City is regulating its own payroll system and workplace, not the property of others. The Supreme Court in Schaumburg v. Citizens for Better Environment, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980) declared a municipal ordinance prohibiting door-to-door solicitations of contributions by a charitable organization that did not use at least 75% of its receipts for charitable purposes unconstitutionally overbroad in violation of the First and Fourteenth Amendments. Schaumburg's ruling was recently reaffirmed in Secretary of the State of Maryland v. Munson, ___ U.S. ___, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Both Munson and Schaumburg struck down a 25% administrative and fund-raising limitation in the context of regulations that impacted on door-to-door and on-street solicitation. There is, however, a constitutional difference between the type of regulations allowed on the City's payroll and those permitted on the City's streets. "`Were we to hold to the contrary, display cases in public hospitals, libraries, office buildings, military compounds and other public facilities immediately would become Hyde Parks open to every would-be pamphleteer and politician. This the Constitution does not require.'" United Postal Service v. Council of Greenburgh Civil Associations, 453 U.S. 114, 130 n. 6, 101 S.Ct. 2676, 2685 n. 6, 69 L.Ed.2d 517 (1981), (quoting Lehman v. City of Shaker Heights, 418 U.S. 298, 304, 94 S.Ct. 2714, 2717, 41 L.Ed.2d 770 (1974) (opinion of Justice Blackmun)). Thus, the question to be decided by this Court is whether the City payroll and workplace are the type of forums in which the Schaumburg and Munson rules govern.
The analysis set forth by the Supreme Court in Perry Education Association v. Perry Local Educators, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) is the gate through which this Court's inquiry must first pass. In Perry the court articulated from prior precedent three classes of forums. The first class is the public forum, or "places which by long tradition or by government fiat have been devoted to assembly and debate...." Id. at 45, 103 S.Ct. at 954. In public forums, the government may not prohibit all speech and may enforce content-based regulation only if such regulation is necessary to serve a compelling state interest and narrowly drawn to achieve that end. Content-neutral *743 time, place and manner restrictions may also be imposed if they are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. Streets and public parks are classic examples of public forums. Id.
The second type of forum is public property which the state has opened for use by the public. The state is not required to indefinitely retain the open character of the facility, as long as it does, however, it is bound by the same standards that apply in a traditional public forum. Id. at 46, 103 S.Ct. at 955. This second category of forum includes university meeting facilities, Widmar v. Vincent, 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), school board meetings, City of Madison Joint School District v. Wisconsin Public Employment Relations Commission, 429 U.S. 167, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976), and municipal theaters, Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).
The third class of forum is public property which is not by tradition or designation a forum for public communication. Such property is governed by different standards, and the state, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated. Perry, 460 U.S. at 46, 103 S.Ct. at 954; United States Postal Service v. Council of Greenburg Civic Association, 453 U.S. at 129-30, 101 S.Ct. at 2685; Greer v. Spock, 424 U.S. 828, 836, 96 S.Ct. 1211, 1216, 47 L.Ed.2d 505 (1976); Adderly v. Florida, 385 U.S. 39, 48, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966). In nonpublic forums the state may, in addition to time, place and manner restrictions, reserve the forum for its intended purposes provided that the regulation of speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. Perry, 460 U.S. at 46, 103 S.Ct. at 955.
Selective access to nonpublic forums by the state does not transform the nonpublic forum into a public forum. In order to covert a nonpublic forum into a public forum the state must open the property to the public as a place for expression or allow indiscriminate access to the property by the general public. Id. at 45-47, 103 S.Ct. at 954-956. For example, the issue presented to the court in Perry was whether an interschool mail system and teacher mailboxes were public forums. In Perry the court held that selective access to the mail facilities granted to some outside organizations such as the YMCA, Cub Scouts, and other civic and church organizations did not transform the mail system into a public forum. School regulations regarding access to the forum were required, therefore, only to meet a reasonableness test. Similarly, the Court in Greer v. Spock, 424 U.S. at 838 n. 10, 96 S.Ct. at 1217 n. 10, held that allowing civilian speakers and entertainers to appear on a military base did not convert the base into a public forum. Furthermore, in Lehman v. City of Shaker Heights, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974) (opinion of Blackmun, J.) a plurality of the court decided that a city transit system's rental of space in its vehicles for commercial advertisement did not require it to accept partisan political advertising. Thus, selective access by the state to its property does not transform that property into a public forum. The rules and regulations of the state governing access must simply be reasonable.

II
The first issue presented for this Court's decision is whether the City's workplace, where solicitations occur, and the City's payroll, where deductions occur as a result of the solicitations, are public or nonpublic forums. Although the issue of solicitations and payroll deductions has been presented to courts of appeals, no appellate court has yet specifically ruled on the issue. NAACP Legal Defense & Educational Fund v. Devine, 727 F.2d 1247, 1257 (D.C. Cir.1984), cert. granted, ___ U.S. ___, 105 *744 S.Ct. 322, 83 L.Ed.2d 259 (1984) (argued before the court February 19, 1985. 53 U.S.L.W. 3614 (1985)); National Black United Fund, Inc. v. Devine, 667 F.2d 173 (D.C.Cir.1981). However, the dissent in NAACP Legal Defense & Educational Fund v. Devine, 727 F.2d at 1268-82 discussed the issue at length and concluded that the federal workplace is a nonpublic forum in which the government may make reasonable regulations. Id. at 1274 (Starr, J., dissenting). This Court agrees with Judge Starr's dissent that the workplace is a nonpublic forum.
The City workplace and payroll bear little similarity to streets and parks  the paradigm instances of public forums. Neither does the City workplace or payroll resemble university meeting facilities, municipal theaters or school board meetings, examples of nonpublic forums transformed into public forums by the state. The City workplace and payroll, however, are remarkably similar to the school mail system held by the court in Perry to be a nonpublic forum. As in Perry the City workplace and payroll are forums where the government permits limited access, but limited access does not alter the nonpublic nature of the forum. Only when the government opens the property to the public or allows the public indiscriminate access to the property is a nonpublic forum transferred into a public forum. Perry, 460 U.S. at 45-47, 103 S.Ct. at 954-956. The City has done neither with regard to its workplace or payroll and thus they have not been transformed into a public forum.
The City does not allow any organization that claims to be a charity access to its payroll. Charities that desire access to the City's payroll must meet the City's published requirements. No policy of indiscriminate access to the payroll has been established or practiced, and, therefore, the City has not created a public forum out of its payroll and workplace. Moreover, even if a city had at one time allowed indiscriminate access to its property, the constitution does not require the city to "indefinitely retain the open character of the facility...." Perry, 460 U.S. at 46, 103 S.Ct. at 955. The Court holds that the City workplace and payroll are nonpublic forums.
The regulations governing non-public forums need only be reasonable and not designed to suppress the viewpoint espoused by the speaker. Perry, 460 U.S. at 46, 103 S.Ct. at 955. The second part of the nonpublic forum Perry test, which mandates that the regulation not suppress the viewpoint of a particular speaker, needs some elaboration. The decisions of the court make it clear that the state may exclude speakers based upon the category or type of speech involved, e.g., political versus nonpolitical, but may not discriminate against particular viewpoints expressed by speakers of a certain type. However, the drawing of lines between categories or types of speech need only be reasonable. For example, the court in Perry held that it was reasonable to allow the union which currently represented the teachers access to the school mail system while denying such access to rival unions. Based upon labor law principles the court held that the classification of representative union as opposed to rival union was a reasonable classification. The determination by the state of the category or type of speech allowed need only be reasonable. See also Greer v. Spock, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976); Lehman v. City of Shaker Heights, 418 U.S. 298, 299, 94 S.Ct. 2714, 2715, 41 L.Ed.2d 770 (1974) (plurality opinion).

III
Thus, the Court must determine if the 25% limitation on fund-raising and administrative costs is reasonable line drawing by the City. The clear purpose of such a limitation is to insure that those charities participating in the City payroll deduction plan are using at least 75% of their funds to provide services to their constituency. Such a limitation is clearly reasonable, in that the purpose and function of a charity is to provide services to those whom it seeks to aid. The City is not bound by the tax status of a charity when *745 the City decides whether to allow an entity to receive the benefits of the City's payroll deduction plan. The City is free to make its own regulations governing the type of entity granted access to its own property provided those regulations are reasonable. Moreover, the constitution does not require the City to produce evidence of the reasonableness of its regulations but simply produce reasonable explanations for its regulations. Perry, 460 U.S. 52 n. 12, 103 S.Ct. at 959 n. 12. However, the City did produce evidence that its own employees are motivated, in part, to contribute to a charity because the City allows a charity to participate in the payroll deduction plan. A 25% administrative and fund-raising cap is a reasonable mechanism to see that the charity benefits those whom it purports to serve.
The 25% limitation does not suppress the viewpoint of any particular speaker because the City opposes the speaker's viewpoint. Although The Regulation prohibits all charities that have greater than 25% administrative and fund-raising costs from participating in payroll deductions, such a limitation impacts evenly on the entire category or type of charity with such costs. The limitation on a category, as opposed to the message of a particular speaker falling within a category, however, need only be reasonable. The 25% limitation imposed by the City is a reasonable regulation of charitable solicitation at the City workplace and on the city payroll.
The case authorities relied on by plaintiff are inapposite to the case at bar. NAACP Legal Defense & Educational Fund, Inc. v. Devine, supra, was concerned with the Executive Order No. 12,404, 48 Fed.Reg. 6,685 (1983) excluding legal defense funds from the Combined Federal Campaign, the payroll deduction plan for federal employees. The Court in NAACP did not reach the issue of whether the federal payroll is a nonpublic forum but held that even if it were, an exclusion of legal defense funds would be unreasonable. Thus, NAACP is factually dissimilar to the 25% administrative and fund-raising limitation in the case at bar. Similarly, Black United Fund of New Jersey v. Kean, 593 F.Supp. 1567 (D.N.J.), reversed on other grounds, 763 F.2d 156 (3rd Cir.1985), arose out of a factual background quite different from this litigation. The Court in Black United Fund held that a statute that allowed only the United Way and no other charity to participate in payroll deduction was unreasonable. Clearly a 25% limitation on administrative and fund-raising costs is far different from the type of preferential treatment of one charity that was at issue in Black United Fund.

IV
Plaintiff also maintains that the 25% limitation is an unconstitutional delegation of discretion to an administrative officer. The portion of The Regulation challenged by plaintiff as delegating discretion is the requirement that "[t]he organization's administrative and fund-raising expenses do not exceed 25% of gross contributions." The Regulation does not define the terms "administrative and fund-raising expenses," and because those terms are not defined the plaintiff argues that The Regulation unconstitutionally delegates discretion to an administrative officer. In passing on the constitutionality of the 25% limitation it must be remembered that the regulation does not govern access to public forums, but rather limits access to a nonpublic forum.
The 25% limitation in the case at bar does not vest an administrative official with the type of unbridled discretion found to violate the First Amendment in public forum cases. Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1968) (ordinance allowing City Commission to refuse a parade permit if its members believe the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused); Lovell v. Griffin, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1983) (ordinance forbidding the distribution of literature without the permission of the City Manager). The *746 limitation gives clear guidelines that administrative and fund-raising costs may not exceed 25%. This 25% rule is not open to arbitrary application and therefore it does not violate the First Amendment. Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 649, 101 S.Ct. 2559, 2564, 69 L.Ed.2d 298 (1980).
The failure to define the terms administrative costs and fund-raising expenses does not render the 25% limitation in The Regulation unconstitutional. These terms are readily understandable and self-explanatory. Furthermore, if a charity and an administrative official are in disagreement over the classification of certain expenditures as administrative or fund-raising costs, the charity may seek judicial review of the administrator's decision under the Missouri Administrative Procedure Act, § 536.150 R.S.Mo. The 25% limitation does not vest unbridled discretion in the hands of an administrative officer in violation of the First Amendment.
Plaintiff also maintains that The Regulation is unconstitutionally vague in violation of the due process clause of the constitution because the terms administrative and fund-raising costs are vague. Challenges to statutes based on the "vagueness doctrine" generally involve criminal or quasi-criminal statutes. See, e.g., Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); Garner v. White, 726 F.2d 1274 (8th Cir.1984). Here, however, in attacking the 25% limitation on vagueness grounds, the plaintiff is in effect charging the limitation results in an unconstitutional grant of authority to an administrative official and is an illegal prior restraint. As previously noted, the 25% limitation in this Regulation governing access to a nonpublic forum does not give an administrative official unbridled discretion in violation of the constitution. Furthermore, because the forum at issue is a nonpublic forum and the 25% limitation is reasonable, there is no unconstitutional prior restraint on free speech.

V
A resolution of the First Amendment claims of plaintiff in favor of defendant also results in the rejection of a challenge to the 25% limitation based on equal protection. Because the City's work place and payroll are not public forums, plaintiff does not have a fundamental right to have access to the forum. Regulations restricting access to the forum must, therefore, simply be rationally related to a legitimate state purpose. Perry, 460 U.S. at 54, 103 S.Ct. at 959. The classification between those charities that have a 25% administrative and fund-raising expense limitation and those that do not is reasonably related to the legitimate state purpose of insuring that charities benefit those whom they purport to serve. Thus, the 25% cap passes constitutional muster under the equal protection clause.
Similarly, it cannot be successfully argued that the 25% cap is unconstitutional as an "irrebuttable presumption" in violation of the due process clause of the Fourteenth Amendment. The "irrebuttable presumption" doctrine has been merged into equal protection analysis and does not stand alone as an independent justification for striking down a statute. See Oldham v. Ehrlich, 617 F.2d 163, 167 n. 6 (8th Cir.1980); Trafelet v. Thompson, 594 F.2d 623, 629-30 (7th Cir.), cert. denied, 444 U.S. 906, 100 S.Ct. 219, 62 L.Ed.2d 142 (1979). Thus, absent a suspect classification or a fundamental right being involved, a so-called "irrebuttable presumption" will stand if the classification created is reasonably related to a legitimate state interest. Furthermore, even in those jurisdictions which still recognize the irrebuttable presumption doctrine as a due process clause concept such presumptions are constitutional if the presumption (as opposed to the classification created by the presumption) does not involve a fundamental right and is rationally related to a legitimate government *747 interest. Malmed v. Thornburgh, 621 F.2d 565, 575, 578 (3d Cir.), cert. denied, 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980) (opinion by Judge Aldisert). Under either of the above two approaches the 25% limitation passes constitutional muster.

Conclusion
The Court has carefully examined all the arguments advanced by plaintiff and finds them to be without merit. The 25% administrative cost and fund-raising limitation in Joint Regulation No. 1 is constitutional, and as a result the city is free to enforce it. Because all the issues involved in plaintiff's complaint have been resolved in favor of the defendants, the Court will dismiss plaintiff's complaint and enter judgment in favor of defendants.