**UNITED BLACK COMMUNITY FUND, INC., a Missouri Corporation, Appellant,**

**v.**

**CITY OF ST. LOUIS, MISSOURI; Paul M. Berra, In His Official Capacity as Comptroller; William C. Duffe, In His Official Capacity as Director of Personnel, Appellees.**

No. 85–1885.

United States Court of Appeals, Eighth Circuit.

Submitted May 16, 1986.

Decided Sept. 8, 1986.

Irene J. Smith, St. Louis, Mo., for appellant.

Francis M. Oates, St. Louis, Mo., for appellees.

Before ARNOLD, FAGG, and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

The issue in this case is whether a city which opens its payroll deduction process to charitable organizations for soliciting and collecting pledges may consistent with the first amendment limit participation to those charities whose administrative and fundraising expenses do not exceed twenty-five percent of gross contributions. The City of St. Louis, pursuant to such a regulation, notified the United Black Community Fund, Inc., that payroll deductions on the Fund's behalf would be discontinued. The Fund sought to enjoin enforcement of the regulation and obtained a temporary

restraining order; but the district court,[1] after a consolidated hearing on preliminary and permanent relief, held for the City. We affirm.

The Supreme Court since *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980), has recognized that charitable solicitations "are so intertwined with speech that they are entitled to the protections of the First Amendment." *Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 959, 104 S.Ct. 2839, 2848, 81 L.Ed.2d 786 (1984). Governmental regulation of fundraising activities thus will be upheld only to the degree that the restrictions serve "sufficiently strong, subordinating interest[s]" and are "narrowly drawn" to avoid unnecessary interference with first amendment freedoms. *Schaumburg*, 444 U.S. at 636–37, 100 S.Ct. at 835–36. The Court has twice struck down statutes or ordinances limiting solicitation by organizations that spent more than twenty-five percent of their receipts on fundraising, salaries, and overhead. *Munson, supra; Schaumberg, supra.* Such percentage limitations, the Court has concluded, are not sufficiently tailored to the commonly asserted governmental purpose of preventing fraud because high administrative costs also characterize organizations which engage to a greater degree than traditional welfare charities in research, advocacy, and public education. *Schaumburg*, 444 U.S. at 636–37, 100 S.Ct. at 835–36. The Fund asserts that it is such an information-oriented organization and that the limitation on its access to the City's payroll deduction process is, in light of *Schaumburg* and *Munson*, unconstitutional.

The district court, however, observed that *Schaumburg* and *Munson* involved regulations affecting door-to-door, on-street, or other public forms of solicitation and concluded, "There is * * * a constitutional difference between the type of regulations allowed on the City's payroll and those permitted on the City's streets." *United Black Community Fund v. City of St. Louis*, 613 F.Supp. 739, 742 (E.D.Mo. 1985). This conclusion correctly anticipated the Supreme Court's decision in *Cornelius v. NAACP Legal Defense & Educational Fund*, —— U.S. ——, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), a case involving access to the Combined Federal Campaign, an annual structured program for the solicitation during working hours of charitable contributions from federal employees. The government had limited participation in the Campaign to health and welfare charities providing direct assistance to individuals, in contrast to nonprofit organizations engaged in lobbying or public interest litigation. The Supreme Court recognized that in the context of the workplace, charitable solicitation implicates not just the first amendment but also the government's interest as a property owner in limiting its property to the intended uses. *Id.* at 3448. The Court thus applied "forum analysis"—i.e., the previously developed doctrine embodying the proper balance between speech and government property interests—to determine the appropriate standard of scrutiny by which the limitations on solicitation were to be measured. *Id; see Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Hubbard Broadcasting v. Metropolitan Sports Facilities Commission*, 797 F.2d 552 (8th Cir.1986).

The St. Louis payroll deduction program, the district court concluded, is a nonpublic forum, *United Black Community Fund*, 613 F.Supp. at 744; and in light of the Supreme Court's similar conclusion with regard to the forum in *Cornelius*, 105 S.Ct. at 3450–51, we cannot disagree. In both instances the governmental unit opened a portion of its workplace—a setting basically incompatible with general public expression—on a limited basis to only those charitable organizations which met certain requirements. The circumstances under

---

**1.** The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

which the respective regulations were developed each suggested more a concern with minimizing disruption than an intent to designate a public forum open to all charities. Furthermore, prior access to the forum (an element which was present in *Cornelius* but was not discussed) is irrelevant because, as the district court pointed out, a governmental unit which opens a nonpublic forum to the public is not required to maintain the open character of the forum indefinitely. 613 F.Supp. at 744 (citing *Perry*, 460 S.Ct. at 45–46, 103 S.Ct.at 954–955).

■ Restrictions on access to nonpublic forums are permissible "so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius*, 105 S.Ct. at 3451. The Fund challenges only the district court's conclusion that the St. Louis regulation was reasonable, arguing that the court in fact applied a weaker "rational basis" test like that used in equal protection analysis when no fundamental rights are involved. The Supreme Court in *Cornelius*, however, emphasized that a governmental restriction on access to a nonpublic forum does not have to be the "most reasonable" or "only reasonable" limitation possible and does not have to be "narrowly tailored" or enacted in aid of a "compelling" governmental interest. *Id.* at 3453. The Court particularly noted that the Combined Federal Campaign could reasonably be limited on the premise that a dollar spent directly providing food or shelter to a needy person was more certain of doing benefit than a dollar spent on litigation. *Id.* The St. Louis regulation achieves the same purpose of limiting participation in the payroll deduction program to those charities most certain of doing the most benefit to the needy, regardless of whether the excluded charities exceed the twenty-five percent administrative expenses cap because of inefficiency or fraud or because they at least in part distribute their bene-

fits more indirectly through educational activities.

Finally, the Supreme Court in *Cornelius* made clear that a restriction on access to a nonpublic forum does not run afoul of the first amendment "merely because use of that forum may be the most efficient means of delivering the speaker's message." *Id.* The Fund has not suggested that it does not have access to St. Louis city employees through mail or in-person solicitation outside the workplace. Accordingly, we conclude that the City's twenty-five percent administrative expenses cap for participation in the payroll deduction process is consistent with the demands of the first amendment.

■ We have carefully considered the Fund's additional contentions that the St. Louis regulation is overbroad and void for vagueness and delegates excessive discretion to the administering official; and in light of our conclusions above, we must reject these arguments also. The judgment of the district court is affirmed.