1996 SD 52

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Ronald S. SHEARER, Defendant and Appellant.**

No. 19210.

Supreme Court of South Dakota.

Considered on Briefs Feb. 14, 1996.

Decided May 8, 1996.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for plaintiff and appellee.

Todd C. Miller, Beresford, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1] Ronald Shearer appeals his conviction for unauthorized possession of a controlled substance (methamphetamines), possession of marijuana, and possession of drug paraphernalia. He contends evidence admitted against him was obtained in violation of the Fourth Amendment. He also challenges the sufficiency of the evidence to support his conviction for possession of a controlled substance. We affirm in part, reverse in part and remand.

## FACTS

[¶ 2] On June 16, 1994, Shearer and Sean Nimick were passengers in a vehicle being

driven by Angelic Cheek through Union County, South Dakota. The three were seated in the front seat of the car. They were on their way to a concert in Ames, Iowa. Highway Patrol Trooper Henningson observed the vehicle and radioed Highway Patrol Trooper Joffer "to take a look at it" when it went by. Trooper Henningson did not elaborate. Trooper Joffer stopped the vehicle because an object was dangling from the interior rearview mirror in violation of SDCL 32–15–6. As he spoke to Cheek, he noticed two coolers in the back seat. He also noted all three individuals had freshly lit cigarettes; the trooper believed it was a common practice to light cigarettes to conceal the smell of alcohol.

[¶ 3] Trooper Joffer took Cheek back to his vehicle and gave her a warning ticket for the dangling object hanging from her rearview mirror. He asked if there were alcoholic beverages in the coolers. She said there were, but none were open. Trooper Joffer asked for consent to search the car for open containers and Cheek gave that consent.

[¶ 4] Trooper Henningson arrived on the scene. The officers asked Shearer and Nimick to step out of the vehicle. Trooper Henningson spoke with Nimick while Trooper Joffer talked to Shearer. Joffer informed Shearer that Cheek had consented to a search of the vehicle and asked Shearer if there were any open containers in the car. Shearer said he was not aware of any. Trooper Joffer asked if Shearer had any weapons on his person and he responded that he did not. Trooper Joffer then conducted a pat search of Shearer for weapons. (Joffer stated a pat-down search was standard procedure to ensure officer safety during a vehicle search.) Shearer was not wearing a shirt at the time. Trooper Joffer felt what he believed to be a lighter in Shearer's left pants pocket. He asked Shearer, "Got a lighter in your pocket?" and Shearer said, "Yes." Then Joffer felt what he thought was a pill bottle in Shearer's right pocket. According to Joffer, it felt like a small cylindrical container. He knew it was not a weapon. Joffer asked what it was, and Shearer said it was a lighter. Joffer stated to Shearer, "Could you take it out, please." Joffer want-

ed Shearer to remove the bottle, because he suspected it contained "something." Shearer turned and faced the officer and placed both hands in his pockets. Then Shearer quickly removed a pharmaceutical bottle with a white cap and threw it in the ditch. Joffer immediately placed Shearer in handcuffs. When asked what was thrown in the ditch, Shearer responded "A lighter." After a very short time, Shearer told the officer the item thrown in the ditch was a small amount of marijuana in a pill bottle.

[¶ 5] Joffer proceeded to search Cheek's vehicle. He found a blue and white canvas bag lying on the front passenger side floorboard. Joffer testified the bag was large enough to hold several open containers of alcohol. He zipped open the bag and found a clear plastic bag with a green leafy substance which appeared to be marijuana. Joffer also found a Camel cigarette pack full of rice in the bag. When he dumped the rice out, he found three bindles containing a white powder which he thought might be a controlled substance.

[¶ 6] Joffer asked Shearer if the duffel bag was his. Shearer advised that the bag belonged to Nimick. Nimick agreed the bag was his, but was evasive about whether he owned all the contents of the bag.

[¶ 7] Joffer subsequently found the pill bottle Shearer had thrown in the ditch. Chemical analysis indicated the green, leafy substance found in the plastic bag and in the pill bottle was marijuana and the white powder found in the three paper bindles was methamphetamine.

[¶ 8] The State charged Shearer with unauthorized possession of a controlled substance, possession of marijuana, and possession of drug paraphernalia. Shearer moved to suppress the marijuana and methamphetamine confiscated by the officers, asserting that the search of his person and of Nimick's duffel bag was unlawful. The trial court denied the motion. A jury convicted Shearer of all three crimes charged and he appeals.

## Issue I.

[¶ 9] **Did Cheek's consent to search her car for open containers authorize law**

**enforcement to search inside a blue duffel bag found in the car?**

[¶ 10] The Fourth Amendment to the United States Constitution and Article VI, § 11, of the South Dakota Constitution guarantee the right of the people to be free from unreasonable searches and seizures. The state and federal constitutions "generally require searches of persons and places to be authorized by warrant and require such warrants to be based on probable cause to believe that the search will yield contraband or other evidence of a crime." *State v. Zachodni*, 466 N.W.2d 624, 627 (S.D.1991) (citations omitted).

[¶ 11] There are a few specific and well-recognized exceptions to this rule. *Minnesota v. Dickerson*, 508 U.S. 366, 372–373, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334, 343–44 (1993). Consent given to law enforcement to conduct a search removes any necessity to obtain a warrant based on probable cause. *State v. Fountain*, 534 N.W.2d 859, 863 (S.D.1995) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858 (1973); *Zachodni*, 466 N.W.2d at 628). Although Shearer does not dispute that Cheek consented to a search of the vehicle, he challenges the scope of her consent. He contends Cheek's consent to search the vehicle for open containers did not extend to the blue bag owned by Nimick that was lying on the passenger side of the car.

[¶ 12] When reviewing a trial court's legal decision on a suppression motion, we follow the abuse of discretion standard. *Fountain*, 534 N.W.2d at 862–63 (citing *State v. Ramirez*, 535 N.W.2d 847 (S.D. 1995); *State v. Flegel*, 485 N.W.2d 210, 213 (S.D.1992)). "The ultimate decision of the trial court on suppression will be affirmed unless the defendant can demonstrate that such discretion has been exercised to an end or purpose not justified by, and clearly against, reason and evidence." *Fountain*, 534 N.W.2d at 863 (citing *Ramirez*, 535 N.W.2d at 849; *State v. Almond*, 511 N.W.2d 572, 574 (S.D.1994)). The presence or absence of consent to search is a question of fact. *Fountain*, 534 N.W.2d at 863. The trial court's finding regarding consent will be upheld unless, viewing the evidence in the light most favorable to the finding, it is clearly erroneous. *Id.* (citing *Almond*, 511 N.W.2d at 573–74).

[¶ 13] Shearer argues that Cheek's consent to search the vehicle could not extend to Nimick's duffel bag and its contents. Shearer does not claim that the blue duffel bag belonged to him or that he owned any of the items contained in the bag.

[¶ 14] Even if the search of Nimick's bag was unlawful, no relief could be afforded to Shearer. He may not assert the rights of another as a means of excluding evidence in his own case. "[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." *Alderman v. United States*, 394 U.S. 165, 171–72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176, 185–86 (1969). There are sound reasons for this rule:

> Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. . . . No rights of the victim of an illegal search are at stake when the evidence is offered against some other party. The victim can and very probably will object for himself when and if it becomes important for him to do so. . . . The deterrent values of preventing the incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth.

394 U.S. at 174–75, 89 S.Ct. at 966–67, 22 L.Ed.2d at 187.

[¶ 15] We therefore hold the trial court did not abuse its discretion in admitting the fruits of the search of the duffel bag.

## Issue II.

[¶ 16] **Did the trial court abuse its discretion in refusing to suppress evidence of the marijuana contained in the pill bottle, because troopers lacked constitutional authority to make a Terry-type stop and frisk of Shearer?**

■ [¶ 17] In addition to the search of the blue bag, Shearer also challenges the constitutionality of the pat-down search of his person by Trooper Joffer. He contends the marijuana contained in the pill bottle should have been suppressed due to the illegality of this search.

■ [¶ 18] In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized another exception to the general rule that a search without probable cause and a warrant is *per se* unreasonable. The *Terry* court held:

> [W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquires, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.

392 U.S. at 30–31, 88 S.Ct. at 1884–85, 20 L.Ed.2d at 911. The *Terry* exception is a narrow one. It permits a reasonable search for weapons for the protection of the police officer "where he has reason to believe that he is dealing with an armed and dangerous individual[.]" 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

[¶ 19] In this case, Trooper Joffer testified he did not believe that Shearer was armed or presently dangerous to him. Joffer also testified neither Nimick nor Shearer did anything to cause him to believe they were a danger or risk to himself or anyone else. The trooper stated he merely conducted the search as part of a "standard procedure" designed to ensure officer safety, and that he conducts a pat search in every case when he plans to search a car.

[¶ 20] The *Terry* court held, "in determining whether the officer acted reasonably in such circumstances, due weight must be given not to his inchoate and unparticularized suspicion or 'hunch,' but to the *specific reasonable inferences which he is entitled to draw from the facts in light of his experience.*" 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909 (emphasis added). In this case, Trooper Joffer did not make any specific, reasonable observations to support a belief that Shearer was armed and dangerous. Shearer was not in custody. Joffer had no present intention to transport Shearer in his patrol vehicle, and Shearer had never consented to a search of his person. Joffer simply relied on the standard procedure of patting down occupants of a vehicle prior to conducting a consent search. The *Terry* requirement of present dangerousness was not satisfied. The pat-down search of Shearer therefore violated his constitutional right to be free from unreasonable search and seizure.

■ [¶ 21] Under the exclusionary rule, illegally obtained evidence must be suppressed. *State v. McCreary,* 82 S.D. 111, 125, 142 N.W.2d 240, 247 (1966) (citing *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). The rationale for this rule is to deter police from violating constitutional protections. *State v. Saiz,* 427 N.W.2d 825, 826 (S.D.1988). The State urges application of the inevitable discovery exception to the exclusionary rule. *See, e.g., Satter v. Solem,* 458 N.W.2d 762, 767 (S.D.1990). Under this exception, illegally obtained evidence

may be admitted if the evidence ultimately would have been discovered by legitimate means. *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377, 387–88 (1984).

[¶ 22] Automatic application of the inevitable discovery rule encourages law enforcement to use unconstitutional shortcuts to obtain evidence. Wayne R. LaFave, Search and Seizure § 11.4(a), at 244 (3d Ed 1996). Consequently, the inevitable discovery rule should not be applied "in a loose and unthinking fashion." *Id.* at 243–44. "In carving out the 'inevitable discovery' exception to the taint doctrine, courts must use a surgeon's scalpel and not a meat axe." *Id.*

[¶ 23] In this case, Trooper Joffer conducted an intrusive search of the person without legal authority to do so. Excluding the evidence obtained from this unlawful search appropriately discourages law enforcement from using "standard procedures" to search individuals when they have no reasonable basis for doing so. On the other hand, were we to permit the fruits of this search to be admitted, there would be no effective sanction to deter police from employing similar unlawful methods in the future. Fourth Amendment protections to our citizens cannot be sacrificed. Accordingly, we hold the trial court abused its discretion when it ruled the marijuana in the pill bottle was admissible evidence.

### Issue III.

[¶ 24] **Was the evidence insufficient to convict Shearer of aiding and abetting possession of a controlled substance?**

[¶ 25] SDCL 22-3-3 states: "Any person who, with the intent to promote or facilitate the commission of a crime, aids, abets or advises another person in planning or committing the crime, is legally accountable, as a principal to the crime." The State asserted that Shearer had aided Nimick in obtaining the methamphetamine found in Nimick's duffel bag and, therefore, Shearer was legally accountable for possession of the controlled substance. The jury implicitly agreed, convicting Shearer of possession of a controlled substance. He contends the evidence at trial was insufficient to support his conviction.

[¶ 26] " 'In determining the sufficiency of evidence on appeal, the test is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making this determination, this court must accept the most favorable inferences that can be drawn therefrom in support of the verdict.' " *State v. Schmiedt,* 525 N.W.2d 253, 254–55 (S.D.1994) (quoting *State v. Miskimins,* 435 N.W.2d 217, 222 (S.D.1989)).

[¶ 27] John Dalziel, a special agent with the South Dakota Division of Criminal Investigation, testified about an interview he conducted with Shearer after his arrest. Shearer told Dalziel that earlier in the day Nimick had come to the home Shearer shared with Cheek and they had discussed buying some marijuana. When Shearer went into the shower, Cheek called Shearer's drug source, a woman named Mari. The three then went to Mari's residence. Shearer was able to describe Mari's residence and appearance to Dalziel. He was also able to give Mari's phone number to Agent Dalziel. Shearer told Dalziel he had purchased marijuana from Mari approximately twenty times. He told the agent he bought the marijuana in the pill bottle from Mari about three or four days prior to his arrest. Shearer informed Dalziel that Nimick purchased some marijuana and methamphetamine from Mari on the day of the arrest, while Shearer was present.

[¶ 28] Nimick testified he did not know Mari before the day of his arrest. He stated Shearer had introduced him to Mari that day and Shearer was aware of Nimick's intent to purchase marijuana from Mari. He also stated Shearer was present as Nimick purchased both the marijuana and the methamphetamine from Mari. Cheek testified she knew Mari, but she never bought drugs from her.

[¶ 29] Based on evidence that Shearer knew Nimick wanted to purchase an illegal drug and introduced Nimick to his drug source, the jury could conclude that Shearer facilitated Nimick's purchase of methamphetamine from that same source. As the State points out, the fact Nimick did not indicate any intent to purchase methamphetamine until after his introduction to Mari does not absolve Shearer of culpability for aiding and

abetting. Under our law, the evidence must show the principal offender committed all the elements of the underlying offense. *Graham v. State,* 346 N.W.2d 433, 435 (S.D.1984). Once that is shown, then one who aids, abets or advises that crime is, by operation of law, a full participant. *Id.* Here, the evidence amply demonstrated that Nimick possessed methamphetamine in violation of the law. Further, the record shows Shearer facilitated the crime by introducing Nimick to the seller of the drug. The fact that Nimick unexpectedly purchased methamphetamine in addition to marijuana does not absolve Shearer of responsibility as an accomplice to the crime of possession of methamphetamine. *See id.* When Shearer introduced Nimick to his drug dealer, he reasonably should have contemplated that purchases of other drugs could result.

[¶ 30] We affirm in part, reverse in part, and remand for further proceedings in accordance with this opinion.

[¶ 31] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.