1999 SD 110

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Kyle Louise BUCHHOLZ, aka Kyle Louise Bucholz, Defendant and Appellant.**

**No. 20706.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 1999.

Reassigned June 22, 1999.

Decided Aug. 11, 1999.

## FACTS

[¶ 2.] Kyle Buchholz was returning home to Redfield, South Dakota, at approximately 12:30 in the afternoon of March 16, 1998, after attending a weekend foosball tournament in Huron, South Dakota. The South Dakota Highway Patrol had set up a vehicle safety checkpoint along the highway Buchholz was traveling. As Buchholz approached the checkpoint, the highway patrol officer noticed a headlight was not working on the car she was driving. When Buchholz reached the safety checkpoint, the officer approached, asked for a driver's license and informed her a headlight was not working on the vehicle.

[¶ 3.] As Buchholz did not have her driver's license with her, the officer asked her to pull over and have a seat in his patrol vehicle. Once Buchholz was seated in the car, the officer ran her identification and asked her where she was coming from. Buchholz stated she had been at a foosball tournament in Huron.

[¶ 4.] The officer wrote Buchholz a warning ticket. As the two were walking back to Buchholz's car, the officer asked her if she was transporting drugs. Buchholz replied no. The officer then asked if he could search her vehicle and she consented. The officer located a fanny pack, and, upon opening it, methamphetamine was found along with various drug paraphernalia. The search continued and an empty vial believed to have contained methamphetamine was found in another bag. Field tests revealed the substances were methamphetamine.

[¶ 5.] Buchholz was placed under arrest for possession of controlled substances and taken to the Huron Regional Correction Center. Buchholz was booked and asked to provide a urine sample. She initially refused, however after being threatened with catheterization, she provided a urine

Mark W. Barnett, Attorney General, Constance K. Nilles, Assistant Attorney General Pierre, South Dakota, Attorneys for plaintiff and appellee.

Mary G. Keller, Huron, South Dakota, Attorney for defendant and appellant.

GILBERTSON, Justice (on reassignment).

[¶ 1.] Kyle Louise Buchholz appeals from her conviction of possession of controlled substance in violation of SDCL 22–42–5.[1] We affirm.

1. SDCL 22–42–5 provides:
   No person may knowingly possess a controlled drug or substance unless the substance was obtained directly or pursuant to a valid prescription or order from a practitioner, while action in the course of the practitioner's professional practice.... A violation of this section is a Class 4 felony.

sample. The sample tested positive for methamphetamine.

[¶ 6.] Prior to trial, defense counsel made a motion to suppress the results of the urine test. The trial court denied the motion. Defense counsel made two other motions, one for specific discovery of a search warrant affidavit authorizing the search of a Huron hotel during the foosball tournament and another for appointment of an expert witness on fingerprints. The trial court denied both these motions.

[¶ 7.] Buchholz was subsequently convicted of possession of a controlled substance (SDCL 22–42–5) and sentenced to five years in the South Dakota Women's Prison.

[¶ 8.] Buchholz appeals, arguing:

1. Whether the seizure of Buchholz's urine violated her constitutional rights.

2. Whether specific discovery of a search warrant affidavit should have been granted.

3. Whether a fingerprint expert should have been appointed.

4. Whether there was sufficient admissible evidence to support a finding of guilt.

5. Whether the sentence imposed violated Buchholz's constitutional rights.

## STANDARD OF REVIEW

■ [¶ 9.] A trial court's findings of fact used to support or deny a motion to suppress are reviewed under the clearly erroneous standard. *State v. Anderson*, 1996 SD 59, ¶ 8, 548 N.W.2d 40, 42; *State v. Stetter*, 513 N.W.2d 87, 91 (S.D.1994); *State v. Corder*, 460 N.W.2d 733, 736 (S.D. 1990). "This court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made." *State v. Dreps*, 1996 SD 142, ¶ 8, 558 N.W.2d 339, 341 (citing *State v.*

*Baysinger*, 470 N.W.2d 840, 843 (S.D. 1991)). Whether an officer had a lawful basis to conduct a warrantless search is reviewed de novo as a question of law. *State v. Ashbrook*, 1998 SD 115, ¶ 6, 586 N.W.2d 503, 506 (citing *State v. Krebs*, 504 N.W.2d 580, 585 (S.D.1993) (citation omitted)).

## DECISION

[¶ 10.] **1. Whether the seizure of Buchholz's urine violated her constitutional rights.**

■ [¶ 11.] Our recent decision in *State v. Hanson*, 1999 SD 9, 588 N.W.2d 885 controls the disposition of this case. The issue in *Hanson* was exactly the same as is now before us: "[w]hether the seizure of [the defendant's] urine violated her constitutional rights." In *Hanson* our analysis concluded that no violation occurred. 1999 SD 9, ¶ 40, 588 N.W.2d at 893–4. There is no factual or legal reason in the case now before us to conclude otherwise.

[¶ 12.] The three disputed matters are: (1) whether there was probable cause to believe the evidence existed; (2) whether exigent circumstances existed; and (3) whether procurement of the sample was reasonable considering the interests of the accused and society. *Hanson*, 1999 SD 9 at ¶ 28, 588 N.W.2d at 892.

[¶ 13.] a. *Probable cause*

[¶ 14.] Buchholz's vehicle was legally stopped in a traffic check because she had a headlight out. When stopped she also failed to produce the driver's license she should have had in her possession. Buchholz informed the officer she had come from a foosball tournament in Huron. The officer was aware of possible drug use at the tournament. The officer also knew that Buchholz was rumored to use methamphetamine and her ex-husband had been arrested for possession of methamphetamine the week before.

[¶ 15.] After issuing a warning ticket, the officer subsequently asked if she would

consent to a search of her vehicle for drugs. Unlike *Hanson,* here Buchholz gave consent to the search. The subsequent search produced methamphetamine and drug paraphernalia. A field test at the scene clearly indicated to the officer the suspicious substance was methamphetamine. Buchholz was arrested and a urine sample was taken.

■ [¶ 16.] This provides a stronger case for probable cause than existed in *Hanson.* Here Buchholz was the sole occupant of the car while in *Hanson* two other occupants were found in the car besides the defendant. An open vial containing methamphetamine is no less an indication of consumption of that substance than a half-empty open container of alcoholic beverages or an odor of alcoholic beverages emanating from a car. *State v. Tilton,* 1997 SD 28, ¶ 13, 561 N.W.2d 660, 663 (citing *State v. Peterson,* 407 N.W.2d 221, 223 (S.D.1987)). If the officer had probable cause to arrest Buchholz for possession, which he clearly did, "it would follow [he] had probable cause to test her for traces of the illegal substance for which she was arrested." *Hanson* 1999 SD 9 at ¶ 33, 588 N.W.2d at 892.

[¶ 17.] b. *Exigent circumstances*

■ [¶ 18.] "Exigent circumstances exist when there is a situation that demands immediate attention and there is no time to get a warrant." *Hanson,* 1999 SD 9 at ¶ 35, 588 N.W.2d at 892 (citing *State v. Heumiller,* 317 N.W.2d 126, 129 (S.D. 1982)). In *Hanson,* expert testimony was provided to show that marijuana does not dissipate from a person's system as quickly as does alcohol. *Id.* In this case an expert testified that methamphetamine use would only be detectable for two to three days.

[¶ 19.] Nevertheless exigent circumstances exist as a prompt test will indicate a higher concentration of the drug. This assists law enforcement in determining whether consumption of the drug was on the day of the stop or recent.

[¶ 20.] According to authority cited by the defendant, urine tests for methamphetamine are only accurate for 24 to 48 hours from consumption of the drug. Citing *United States v. Pond,* 36 MJ 1050, 1058 (AFCMR 1993). If the officer was confronted with a driver who manifested no outward signs of drug consumption yet recovered an open drug vial from the driver's car, it is logical to assume the period for testing had about run its course. It is illogical to require that the officer, who is sitting on a rural highway must somehow locate the Beadle County State's Attorney to draft an affidavit, find a Magistrate or Circuit Judge to issue the search warrant, and take the defendant to a medical facility to obtain a urine sample if one is not voluntarily provided, all of which is to be completed while the 24–hour clock is ticking towards expiration of a testing period that may have already expired.

■ 21.] *Hanson* concluded, based on an examination of case law from other jurisdictions, there is no basis for treating drug testing any different from blood-alcohol testing. *Hanson,* 1999 SD 9 at ¶ 36, 588 N.W.2d at 893. *See State v. Strong,* 493 N.W.2d 834 (Iowa 1992) (cocaine); *State v. Thompson,* 244 Neb. 189, 505 N.W.2d 673 (1993) (cocaine). "In both cases exigent circumstances existed and the difference is at most only in the matter of degree, not whether the circumstances exist or not." *Id.*

> We are persuaded that requiring an arrestee to submit to a urine test is reasonable under the Fourth Amendment. It is a less intrusive search than the withdrawal of blood from the human body. It involves no risk of trauma or pain. Like alcohol in the blood system, traces of controlled substances in the urine will also disappear over time. In *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) the Court noted that '[a]lthough the metabolites of some drugs remain in the urine for longer periods of time … the delay necessary

to procure a warrant nevertheless may result in the destruction of valuable evidence.' *Id.* at 623, 109 S.Ct. at 1416. *Id.* (Citing *United States v. Edmo*, 140 F.3d 1289, 1292 (9th Cir.1998)). *See also United States v. Twiss*, 127 F.3d 771 (8th Cir.1997), *reh'g & suggestion for reh'g en banc denied.*

[¶ 22.] c. *Balancing of interests of the accused and society*

[¶ 23.] This issue was also analyzed in *Hanson:*

> We have held in issue one that there was probable cause to arrest Hanson for possession of marijuana. As such, the officers had the right to search her in a medically reasonable manner based on exigent circumstances and as incident to that lawful arrest for the drug. The state must establish the procedure itself was reasonable when weighing the accused's interests in privacy and security against society's interest in the procedure in identifying the perpetrator of the crime.
>
> The type of testing used in this case, submitting a urine sample, would seem to be more reasonable and less intrusive on a person's life than the alternative of attempting to secure a warrant. If a warrant were necessary, significant restraints would have to be placed upon the individual to preserve the chain of evidence while the law enforcement sought to locate a magistrate or circuit judge and obtain a warrant.
>
> Urination into a specimen container is reasonable process. As a normal body function, urination is less intrusive than removal of blood by a syringe. There is no threat to the safety or the health of the individual. Considered in the analysis is whether all reasonable medical precautions were taken and no unusual or untested procedures were employed. Here no unusual or untested procedures were required.

1999 SD 9 at ¶ 38–40, 588 N.W.2d at 893 (internal citations and quotations omitted).

[¶ 24.] The sample was not demanded of Buchholz at random but probable cause

existed to believe her body fluid would test positive for drug consumption. *Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908, 919–20 (1966). She was the sole occupant of the car in which the methamphetamine was found. The urine sample and its results are highly accurate and essential to the community's interest in fairly and accurately determining Buchholz's guilt or innocence. This urine sample provided evidence of her knowledge that the drug was in her car and enabled the State to establish the required element of knowledge. *Hanson*, 1999 SD 9 at ¶ 40, 588 N.W.2d at 894 (citing *Strong*, 493 N.W.2d at 837–38 (citing *Winston*, 470 U.S. at 762, 105 S.Ct. at 1617–18, 84 L.Ed.2d at 670). *See also State v. Dickson*, 329 N.W.2d 630, 632 (S.D.1983)).

[¶ 25.] **2. Whether specific discovery of a search warrant affidavit should have been granted.**

[¶ 26.] Buchholz argues that the safety check was connected to a search of a Huron hotel conducted earlier that weekend, pursuant to a warrant. Therefore, Buchholz argues that under SDCL 23A–35–4.1, which permits a defendant to discover the contents of an affidavit supporting a search warrant, she should have been able to discover the affidavit supporting the earlier search of the hotel. The trial court determined the evidence sought was not relevant. We agree.

[¶ 27.] The proper standard for ruling on a discovery motion is whether the information sought is "relevant to the subject matter involved in the pending action...." SDCL 15–6–26(b)(1). "This phraseology implies a broad construction of "relevancy" at the discovery stage because one of the purposes of discovery is to examine information that may lead to admissible evidence at trial." *Kaarup v. St. Paul Fire and Marine Ins. Co.*, 436 N.W.2d 17, 20 (S.D.1989) (citing 8 C. Wright and A. Miller, Federal Practice and Procedure, § 2008 (1970)). "[T]he ex-

tent of discovery permitted by either side rests in the discretion of the court." *State v. Catch the Bear*, 352 N.W.2d 640, 644 (S.D.1984) (citing *State v. Means*, 268 N.W.2d 802, 815 (S.D.1978); *State v. Wade*, 83 S.D. 337, 343, 159 N.W.2d 396, 400 (1968); *see also State v. Erickson*, 525 N.W.2d 703, 711 (S.D.1994)).

[¶ 28.] Buchholz failed to make any showing that the traffic safety check was related to the earlier searches at the hotel. At the preliminary hearing, defense counsel asked the officer, "Were you thinking of the rumors that had gone around about the foosball tournament when this safety check was set up?" The officer responded, "No." Buchholz was not searched, arrested, or charged on the basis of the search warrant at the hotel. Therefore, as to this issue, the trial court did not err.

[¶ 29.] **3. Whether a fingerprint expert should have been appointed.**

[¶ 30.] "A trial court's decision regarding appointment of an expert will not be set aside absent an abuse of discretion." *State v. Red Star*, 467 N.W.2d 769, 771 (S.D.1991) (citing *State v. Jaques*, 428 N.W.2d 260, 264 (S.D.1988)). "The trial judge has broad discretion in determining the necessity of the appointment of an expert in a given factual environment." *Red Star*, 467 N.W.2d at 771 (citing *State v. Hallman*, 391 N.W.2d 191, 194 (S.D. 1986)).

[¶ 31.] Four elements must be satisfied before appointment of an expert must be made:

[T]he request must be (1) in good faith; (2) reasonable in all respects; (3) timely and specifically set forth the necessity of an expert; and (4) clear in that defendant is financially unable to obtain the required service himself and that such service would otherwise be justifiably obtained were the defendant financially able.

*Red Star*, 467 N.W.2d at 771 (citing *State v. Stuck*, 434 N.W.2d 43, 50–51 (S.D.1988)). The trial court determined Buchholz's re-

quest did not fit the requirements of *Red Star*. We agree.

[¶ 32.] Buchholz requested an expert to testify that fingerprints could have been taken from the surfaces of drug paraphernalia. However, there was no necessity for an expert in this case. The chemist for the State testified that fingerprints could have been taken, but were not. Buchholz has made no showing that the trial court abused its discretion with regard to its decision not to appoint an expert witness.

[¶ 33.] **4. Whether there was sufficient admissible evidence to support a finding of guilt.**

In determining the sufficiency of the evidence on review, the question presented is whether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In this review, we must accept that evidence, and the most favorable inferences to be fairly drawn therefrom, which will support the verdict. In determining the sufficiency of the evidence, this Court will not resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt.

*State v. Knecht*, 1997 SD 53, ¶ 22, 563 N.W.2d 413, 421 (internal citations and quotations omitted).

[¶.34.] Buchholz argues there was insufficient evidence to convict her with possession of a controlled substance. We do not agree. Buchholz was the sole occupant of a car that contained methamphetamine. Drug paraphernalia was found amongst her luggage. The urinalysis provided information Buchholz knew of the methamphetamine and had used methamphetamine. Like *Hanson*, Buchholz was not charged with possession of drugs in

her body (or use) but possession of the drug found in the car.[2] 1999 SD 9 at ¶ 43, 588 N.W.2d at 894. There is more than sufficient evidence to convict her on this charge. We affirm.

**[¶ 35.] 5. Whether the sentence imposed violated Buchholz's constitutional rights.**

[¶ 36.] Buchholz claims that the five-year sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. However, the record is void of a sentencing hearing transcript. Without the complete record, we will presume the trial court acted properly. *D.G. v. D.M.K.*, 1996 SD 144, ¶ 29, 557 N.W.2d 235, 240 (citing *Baltodano v. North Cent. Health Services, Inc.*, 508 N.W.2d 892, 895 (S.D.1993)). Buchholz has not overcome this presumption in favor of the trial court. *Id.* (Citing *Owens v. Moyes*, 530 N.W.2d 663, 665 (S.D.1995)). We affirm.

[¶ 37.] MILLER, Chief Justice, and KONENKAMP, Justice, concur.

[¶ 38.] AMUNDSON, Justice, concurs in part and dissents in part.

[¶ 39.] SABERS, Justice, dissents.

AMUNDSON, Justice (dissenting in part, concurring in part).

[¶ 40.] I dissent on issue one and would hold that the search violated Fourth Amendment protections. I concur on issues two and three.

[¶ 41.] Law enforcement lacked probable cause for the search and seizure of Bucholz's urine. Furthermore, even assuming probable cause, exigent circumstances to excuse the necessity of obtaining a warrant did not exist.

[¶ 42.] " '[T]he definition of 'probable cause' employed by the court is a question of law, not of fact or of discretion, and, as such, is fully reviewable de novo, with no presumption attach[ing] to the determination of the circuit court.' " *State v. Zachodni*, 466 N.W.2d 624, 630 (S.D.1991)

(second alteration in original) (quoting *State v. Byrd*, 398 N.W.2d 747, 749 (S.D. 1986)). Buchholz was arrested for possession of controlled substances (SDCL 22–42–5). The arresting officer observed nothing which indicated that Buchholz had ingested or was under the influence of any substances. The officer issued a warning ticket for the broken headlight. It goes without saying that if the officer thought she was under the influence of drugs or alcohol, he would certainly have so charged her. Instead, the officer's reason for testing Buchholz for drug use was simply because she was arrested for possession of methamphetamine. On direct examination, the officer testified:

Q: And when you arrest somebody for methamphetamine, do you usually have them take a urine test?

A: Yes.

This testimony reeks of law enforcement conducting a search as part of "standard procedure" with no facts to support the search. This same type of search was found unconstitutional in *State v. Shearer*, 1996 SD 52, ¶ 20, 548 N.W.2d 792, 797. Under the facts of this case, there simply was no probable cause or clear indication that a urine sample would provide evidence of drug use. This is not a case where defendant was arrested for being under the influence of any substances. Therefore, the search obtaining the urine sample violated Buchholz's rights to be free from unreasonable search and seizure under the Fourth Amendment.

[¶ 43.] In addition to the lack of probable cause, exigent circumstances to excuse the necessity of obtaining a warrant did not exist. In *Schmerber*, the Supreme Court emphasized the necessity of obtaining a search warrant prior to obtaining a blood sample:

Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusion into the human body are

---

**2.** *Supra* note 1.

concerned. The requirement that a warrant be obtained is a requirement that the inferences to support the search "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); *see also Aguilar v. Texas*, 378 U.S. 108, 110–111, 84 S.Ct. 1509, 1511–12, 12 L.Ed.2d 723 (1964). The importance of informed, detached and deliberate determinations of the issue whether or not to invade another's body in search of evidence is indisputable and great. *Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d 908. However, the Supreme Court determined that because the percentage of alcohol in the blood begins to diminish shortly after drinking stops, and because a certain level of intoxicant must be present to support a criminal charge, an emergency or exigent circumstances rationale required the taking of Schmerber's blood without warrant. *Id.* at 771, 86 S.Ct. 1826.

[¶ 44.] After stating its holding, the Supreme Court emphasized its narrowness:

It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States' minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

*Schmerber*, 384 U.S. at 772, 86 S.Ct. at 1836, 16 L.Ed.2d 908.

[¶ 45.] While the State argues the existence of exigent circumstances, the officer's testimony does not support such a claim. With regard to the amount of time methamphetamine can be detected in urine, the officer testified he was unknowledgeable as to the length of time methamphetamine will stay in the urine but that it was "crucial you get the urine test right away."

Q: Based on your [seventeen] years experience and your drug training, do you know how long methamphetamine will stay in urine?

A: No.

Q: Is it crucial that you get the urine test right away?

A: Yes.

Q: Do you know why that is?

A: Well, the sooner you get the urine test, you can get the results back and you can see how those results are [and then you] could determine previous to the time that they were stopped there might have been some usage.

\* \* \*

Q: [States attorney] asked you how long methamphetamine stays in the human body, and I believe your answer was that you don't know?

A: That's correct.

Further, according to the officer's testimony, when a person is arrested for methamphetamines, exigent circumstances automatically exist. On cross-examination, the officer stated:

Q: And your exigent circumstance is that you weren't going to let her go until she produced a urine sample?

A: Yes.

Even the state's attorney, in her closing argument, acknowledges the length of time it takes methamphetamines to be metabolized by the body, "So we know that in the last 72 hours that the defendant used methamphetamine."

[¶ 46.] For exigent circumstances to exist, there must be evidence to support such a claim. This record is devoid of support for exigent circumstances. Without requiring such support, the term "exigent circumstances" is merely pretextual, becoming a blanket exception to the warrant requirement regardless of what crime the person is arrested for, or, the ability of law

enforcement to obtain a warrant before evidence is destroyed. *See State v. Flannigan,* 978 P.2d 127 (Ariz.App. Div. 1 1998) (holding no exigent circumstances where police did not seek a warrant because they had been instructed that exigent circumstances always exist in vehicular manslaughter or aggravated assault cases where the person is suspected of driving under the influence of drugs and alcohol).

[¶ 47.] Unlike the evanescent nature of blood alcohol levels, the presence of methamphetamine in urine can be detected for an extended period of time. *United States v. Pond,* 36 MJ 1050, 1058 (AFCMR 1993) ("We take judicial notice that urine tests indicates methamphetamine use some 24 to 48 hours after consumption of the drug."). Buchholz remained in police custody after her arrest for possession. Under such circumstances, the officer could have obtained, or at least sought, a warrant within this time frame without any risk of losing evidence of methamphetamine use.

[¶ 48.] "There are few activities in our society more personal or private than the passing of urine. Most people describe it by euphemisms if they talk about it at all. It is a function traditionally performed without public observation; indeed, its performance in public is generally prohibited by law as well as social custom." *Rawlings v. Police Department of Jersey City, New Jersey,* 133 N.J. 182, 204–05, 627 A.2d 602, 614 (N.J.1993) (O'Hern, Justice, dissenting) (citing *Skinner,* 489 U.S. at 617, 109 S.Ct. at 1413, 103 L.Ed.2d at 660 (quoting *National Treasury Employees Union v. Von Raab,* 816 F.2d 170, 175 (1987))). "The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the *mere chance* that desired evidence be obtained." *Schmerber,* 384 U.S. at 770, 86 S.Ct. at 1835, 16 L.Ed.2d 908 (emphasis added). The unreasonable seizure of bodily substances is a protected constitutional right.

[¶ 49.] As the United States Supreme Court articulated in *Rochin v. California,*
342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952). "It would be a stultification of the responsibility which the course of constitutional history has cast upon this Court to hold that in order to convict a man the police cannot extract by force what is in his mind but can extract what is in his stomach." Law enforcement forced Buchholz to submit to a urine test on the mere chance there would be evidence of use. The officer observed no behavior indicating Buchholz was under the influence of drugs. Such evidence was not necessary to convict Buchholz of the crime she was charged. It bears repeating that this is *not* a case where defendant was arrested for being under the influence of a drug. Moreover, the State has completely failed to show the existence of exigent or emergency circumstances. Therefore, considering all of the foregoing, this search violated the Fourth Amendment.

[¶ 50.] Evidence illegally seized must be suppressed under the exclusionary rule. *Shearer,* 1996 SD 52, ¶ 21, 548 N.W.2d at 796 (citing *State v. McCreary,* 82 S.D. 111, 125, 142 N.W.2d 240, 247 (1966); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). "The rationale for this rule is to deter police from violating constitutional protections." *Shearer,* 1996 SD 52 at ¶ 21, 548 N.W.2d at 796 (citing *State v. Saiz,* 427 N.W.2d 825, 826 (S.D. 1988)).

[¶ 51.] Although it was error to admit the results of the urine test, State argues such admission is harmless error.

In order to find error harmless, it is necessary for the appellate court to find that the admission of the erroneous evidence did not prejudice the defendant's case. "Prejudicial error, when constitutional questions are being considered, is error which would have some likelihood of changing the result." *State v. Blue Thunder,* 466 N.W.2d 613, 618–19 (S.D. 1991) (citing *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). A constitutional violation may constitute harmless error, and thus

not require reversal, if the court can declare *beyond a reasonable doubt* that the error was harmless and did not contribute to the verdict obtained. *State v. Michalek*, 407 N.W.2d 815, 819 (S.D. 1987) (emphasis added). *State v. Schuster*, 502 N.W.2d 565, 570 (S.D.1993). *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *accord State v. Helmer*, 1996 SD 31, ¶ 37, 545 N.W.2d 471, 477; *State v. Larson*, 512 N.W.2d 732, 735 (S.D.1994).

[¶ 52.] A review of closing arguments discloses that the state's attorney relied almost exclusively on the urine test results to prove a critical element of the crime, knowledge.[3] I conclude, after reviewing the entire record, use of this inadmissible evidence clearly resulted in prejudice to the defendant. Therefore, I would reverse and remand for a new fair trial.

SABERS, Justice (dissenting).

[¶ 53.] I join Justice Amundson's dissent in all respects.

[¶ 54.] In addition, the forced urine test of defendant violated Article VI, § 9 of the South Dakota Constitution. "There can be no doubt that this court has the power to provide an individual with greater protection under the state constitution than does the United States Supreme Court under the federal constitution." *State v. Opperman*, 247 N.W.2d 673, 674 (S.D.1976) (citing *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975)). Article VI, § 9 provides independent state grounds for reversing and remanding this conviction.

[¶ 55.] Article VI, § 9 of the South Dakota Constitution provides in part:

No person shall be compelled in any criminal case to give *evidence* against himself[.]

(Emphasis added). The language of Article VI, § 9 provides broader protection than the Fifth Amendment which provides: "No person ... shall be compelled, in any criminal case, to be a witness against himself[.]"[4] The word "evidence" used in Article VI, § 9 encompasses more than mere testimony. The process imposed here violated Article VI, § 9 because it clearly compelled Buchholz to give evidence against herself in a criminal case.

[¶ 56.] The prohibition contained in Article VI, § 9 does not prevent law enforce-

---

3. States Attorney argued:

We know there was methamphetamine in the car. We know there was methamphetamine in the defendant's system.

Why is it important to know about the urine? And that goes to knowledge. She knows what it is. She's a user. She knows what methamphetamine is.

And why is that important? Well I might show this brown powdery stuff to somebody on the street. They don't know what it is. I probably wouldn't know what that is if I was just looking at it without my training and background as the States Attorney, but an ordinary person probably don't, but a user of methamphetamine knows what that is. They know how to ingest it. They know how to take it.

Same thing with these vials. There are residue amounts in there. A user knows that by looking at them.

Look at these other items. Here is a broken light bulb, right? Well, to a user, to a person that's using methamphetamine, you know that is something that is burnt and used to inhale methamphetamine. Heard that from the expert witnesses. You heard that from a trooper. You know that because you use drugs.

Same thing with this test tube. This is a little more obvious. Some people might know that that is used for drugs, but it's a test tube; a little burnt on the end and a little hole in the middle. Not everybody is going to know what that is, but if you're a user—you have it in your system, you've been using—you know what that is and it goes to knowledge. You know what that is.

And that's why the urine test is important. We know that she knows what it is. She's seen it before. She used it before. She has knowledge of that controlled drug.

4. "This wording is substantively different than its federal counterpart, the Fifth Amendment to the United States Constitution, which protects against compulsion of a person 'to be a witness against himself.'" *State v. Meek*, 444 N.W.2d 48, 51 (S.D.1989) (Henderson, J., dissenting).

ment from *ever* obtaining samples of urine, blood or other bodily substances under proper circumstance such as exigent circumstances or a warrant based on probable cause. However, in this case, law enforcement did not obtain a warrant before seizing Buchholz's urine and exigent circumstances to excuse the necessity of obtaining a warrant did not exist.

[¶ 57.] Therefore, we should reverse and remand for a new, fair trial.