2002 SD 50

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Thomas HOLWAY and Ellie Holway, Defendants and Appellants.**

**Nos. 22075, 22079.**

Supreme Court of South Dakota.

Considered on Briefs March 25, 2002.

Decided May 1, 2002.

Mark W. Barnett, Attorney General, John M. Strohman, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

John R. Murphy, Rapid City, South Dakota, Attorney for defendant and appellant Thomas Holway.

Eric D. Whitcher, Rapid City, South Dakota, Attorney for defendant and appellant Ellie Holway.

GILBERTSON, Chief Justice.

[¶ 1.] Thomas Holway and his ex-wife, Ellie Holway, were co-defendants tried together and convicted of three counts of delivery of drug paraphernalia in violation of SDCL 22–42A–4 and SDCL 22–3–3. The Holways allege a violation of procedural due process by claiming SDCL 22–42A–4 is unconstitutionally vague. Both defendants also appeal the sufficiency of the evidence as it relates to their intent to sell the smoking devices to contain, conceal or inhale a controlled substance, as well as their knowledge of the objects' drug-related nature. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Thomas Holway is a co-owner of Video Blue, an adult bookstore in Rapid City, South Dakota. Ellie Holway is an employee at Video Blue. The Holways attended a trade show in Las Vegas and determined that it would be "very lucrative" to carry certain smoking devices for sale in the store. Thomas Holway contacted the Pennington County State's Attorney, Glenn Brenner (Brenner), to determine if selling the devices would be legal. Brenner read the statute to him and informed him that if it could be proven that the devices could be used for smoking marijuana, law enforcement would be involved.

[¶ 3.] When Thomas contacted Brenner a second time and showed him a "sample" pipe, Brenner referred him to Todd Love, the drug prosecutor for the Attorney General's Office. One of the Holways did contact Love with the same questions presented to Brenner. Love informed the Video Blue representative[1] that it is illegal to deliver, or to possess with the intent to deliver, any drug paraphernalia. He also informed him that he would not be able to claim immunity based upon anything Brenner had said to them. Love explained that the State Attorney General's Office could prosecute Video Blue's owners and employees for drug violations even if the Pennington County State's Attorney did not.

[¶ 4.] In April 2000, the devices were put out for sale in two display cases at Video Blue. The display cases contained various items used for smoking including: pipes, water pipes, bongs, wood dugouts, and carburetors. They also contained roach clips and pipes disguised to look like cigarette lighters, lipstick containers, and hi-liter felt tip markers. Each display

---

1. Love was not sure whether he talked to Thomas Holway or Robert Holway, Thomas' father and co-owner of Video Blue.

case had a sign stating "All paraphernalia sales are only sold with the understanding that the purchaser has only legal intent for its use." Yet, no cigarette or pipe tobacco was sold in the store.

[¶ 5.] On April 14, 2000, the South Dakota Division of Criminal Investigation (DCI) began investigating Video Blue based on allegations that drug paraphernalia was being sold there. Four officers were involved in the investigation: Deputy Sheriff Jeff Whittle (Whittle), Deputy Sheriff Martin Graves (Graves), Detective Dale McCabe (McCabe), and DCI Supervising Agent Robert Overturf (Overturf).

[¶ 6.] Whittle entered the store on April 14, 2000, and purchased a "one-hitter," a small water pipe, and a wood "dugout" pipe from Ellie. Ellie gave him a free package of screens, which are commonly used to prevent a marijuana smoker from inhaling the seeds and stems. When Whittle made a comment about how a friend of his got caught selling items like these, Ellie pointed to the sign. Whittle mockingly replied that he, of course, had only legal intent. Ellie raised her hands and said, "Well, I don't want to know about it." She also acknowledged Whittle's comment about a wood dug-out being an "old standard."

[¶ 7.] Graves entered the store on April 18, 2000, and purchased a red bong and a metal pipe from Ellie. McCabe also entered the store on April 18. He purchased a school bus pipe and a blue hi-liter pipe from Ellie. McCabe asked Ellie if they made a pipe that looked like a police car. She replied "They would probably frown upon that." McCabe also inquired whether he could get a discount. Ellie spoke with Thomas, who agreed to the discount.

She also gave McCabe a free package of screens.

[¶ 8.] Thomas and Ellie were each charged with seven counts of delivery of drug paraphernalia in violation of SDCL 22–42A–4 and SDCL 22–3–3. The two were tried together before a jury on June 5–6, 2001. Thomas and Ellie were each convicted on three of the seven counts and sentenced to 90 days in jail on count I, and two years in prison on counts III and VII.[2] The terms were to run consecutively, with execution of the prison sentences suspended. Both defendants appeal the following issues:

1. Whether SDCL 22–42A–4 is unconstitutionally vague and encourages arbitrary enforcement, thereby causing a violation of procedural due process.

2. Whether the evidence was sufficient to convict Thomas and Ellie Holway on counts I, III and VII of delivery of drug paraphernalia.

### STANDARD OF REVIEW

[¶ 9.] First, whether the enforcement of SDCL 22–42A–4 amounts to a violation of procedural due process is a constitutional question reviewed by this Court *de novo*. City of *Pierre v. Blackwell*, 2001 SD 127, ¶ 7, 635 N.W.2d 581, 584 (citing *Steinkruger v. Miller*, 2000 SD 83, ¶ 8, 612 N.W.2d 591, 595).

[¶ 10.] Second, this case involves the statutory interpretation of the definition of "drug paraphernalia." This interpretation is a question of law reviewed by this Court *de novo*. *H & W Contracting, LLC v. City of Watertown*, 2001 SD 107, ¶ 17, 633 N.W.2d 167, 173 (citation omitted).

---

**2.** Thomas and Ellie Holway were convicted on count I for delivering a cigarette bat, count III for delivering a "dug-out" pipe, and on count VII for delivering a camouflaged hi-liter pipe.

[¶ 11.] Third, "[i]n determining the sufficiency of the evidence on review, the question presented is whether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt." *State v. Buchholz*, 1999 SD 110, ¶ 33, 598 N.W.2d 899, 905 (quoting *State v. Knecht*, 1997 SD 53, ¶ 22, 563 N.W.2d 413, 421). Therefore, we must accept the most favorable inferences to be fairly drawn in favor of the verdict. *State v. Charles*, 2001 SD 67, ¶ 10, 628 N.W.2d 734, 737 (citation omitted). We will not reweigh or resolve conflicts in the evidence. *State v. Karlen*, 1999 SD 12, ¶ 49, 589 N.W.2d 594, 605. Nor will we pass on the credibility of the witnesses. *Id.* "No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt." *Buchholz*, 1999 SD 110 at ¶ 33, 598 N.W.2d at 905 (quoting *Knecht*, 1997 SD 53 at ¶ 22, 563 N.W.2d at 421).

## ANALYSIS AND DECISION

[¶ 12.] **1. Whether SDCL 22–42A–4 is unconstitutionally vague and encourages arbitrary enforcement, thereby causing a violation of procedural due process.**

[¶ 13.] The standard for determining whether a statute is unconstitutionally vague is whether it "give[s] a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *State v. McGill*, 536 N.W.2d 89, 95 (S.D.1995). While a statute must define the crime with clarity and certainty, there is no bar to its broad application. *Id.* (citation omitted). Furthermore, a party challenging the constitutionality of a statute bears the burden of overcoming a strong presumption to the contrary. *State v. Hoeft*, 1999 SD 24, ¶ 15, 594 N.W.2d 323, 326.

There is a strong presumption that the laws enacted by the [L]egislature are constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.

*State v. Hauge*, 1996 SD 48, ¶ 4, 547 N.W.2d 173, 175 (quoting *Sedlacek v. Teener Baseball Program*, 437 N.W.2d 866, 868 (S.D.1989)) (additional citations omitted).

[¶ 14.] The Holways claim that SDCL 22–42A–4 is unconstitutionally vague and encourages arbitrary enforcement. Specifically, they allege that the scienter requirement in SDCL 22–42A–1, the definitional section, "competes" with the scienter requirement in SDCL 22–42A–4, the penalty section. The Holways argue that, as a result of this "contradiction," they did not have sufficient notice of what conduct is prohibited.

[¶ 15.] Notably, the Holways do not assert that the statute is overbroad, but only that it is unconstitutionally vague as applied to them. In essence, they claim that their right to procedural due process has been violated. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362, 369 (1982) (holding claimant cannot assert vagueness challenge as applied to others unless statute proscribes constitutionally protected conduct); *People in the Interest of P.B.*, 339 N.W.2d 121, 123 (S.D.1983) (stating vagueness challenge, when First Amendment rights are not involved, is limited to the specific facts of the case). Therefore, we must determine whether the scienter requirements of the two sections, as applied to the facts of

this case, actually conflict and, therefore, failed to give the Holways sufficient notice that selling certain smoking devices constitutes illegal delivery of drug paraphernalia.

[¶ 16.] The Holways assert that the language in SDCL 22–42A–4 "knowing the drug[-]related nature of the object" creates an objective classification of drug-related objects and, thereby, conflicts with the subjective intent requirement in SDCL 22–42A–1. In addition, the Holways claim that it has universally been held that all statutes penalizing the delivery of drug paraphernalia must be based upon the subjective intent of the possessor because no object is per se illegal. This, however, is only partially true.

[¶ 17.] While a drug paraphernalia statute may have a *mens rea* element to ensure "that those acting in good faith are not swept within a law's broad or ambitious language," it must also have an objective standard for determining what is drug paraphernalia. *See Garner v. White*, 726 F.2d 1274, 1278 (8thCir.1984) (rejecting constitutional challenge to Arkansas drug paraphernalia statutes) (citations omitted). This objective standard serves to avoid the very same arbitrary enforcement that the Holways complain of herein. The United States Supreme Court, in considering a federal statute defining drug paraphernalia as " 'any equipment, product, or material of any kind which is primarily intended or designed for use' with illegal drugs" stated that the phrase "primarily intended" constitutes an objective standard for determining what is drug paraphernalia. *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 517–18, 114 S.Ct. 1747, 1750, 128 L.Ed.2d 539, 547 (1994) (quoting 21 USC § 857(d)). The Supreme Court upheld that statute as giving sufficient notice as to what conduct is

prohibited. *Id.* at 526, 114 S.Ct. at 1754, 128 L.Ed.2d at 552.

[¶ 18.] Likewise, the South Dakota statute provides "[t]he term 'drug paraphernalia' means any equipment, products and materials of any kind which are primarily used, intended for use or designed for use" with illegal drugs. SDCL 22–42A–1. While the South Dakota provisions may consider the knowledge and intent of the possessor, both provisions also have objective standards for determining what constitutes drug paraphernalia. Furthermore, as in *Garner*, the South Dakota law "is virtually identical to the Model Drug Paraphernalia Act, which has now been upheld by this circuit ... and in every other circuit considering its constitutionality." 726 F.2d at 1278–79 (citations omitted). The objective standard referred to by the language of SDCL 22–42A–4 does not conflict with the objective standard set forth in SDCL 22–42A–1. Nor does either of these standards conflict with the *mens rea* requirement.

[¶ 19.] The Holways further maintain that SDCL 22–42A–4 encourages arbitrary enforcement because different prosecutors may view the statutes differently. As explained above, the very standard in SDCL 22–42A–1 that the Holways complain is too objective is the same standard that prevents such arbitrary enforcement. *See, e.g., Gen. Stores v. Bingaman*, 695 F.2d 502 (10thCir.1982) (rejecting discriminatory enforcement challenge on basis that statute contained examples and relevant factors to provide sufficient guidance for authorities in applying the Act uniformly). All law enforcement requires some degree of judgment. A law is not rendered unconstitutionally vague merely because the decision of one official applying the factors is different from that of another official applying those same factors.

[¶ 20.] **2. Whether the evidence was sufficient to convict Thomas and Ellie Holway on counts I, III and VII of delivery of drug paraphernalia.**

■ [¶ 21.] SDCL 22–42A–4 sets forth the elements for the crime of delivering drug paraphernalia:

No person, knowing the drug[-]related nature of the object, may deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to ... contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or marijuana in violation of this chapter. Any person who violates any provision of this section is guilty of a Class 6 felony.

The definition of drug paraphernalia is found at SDCL 22–42A–1:

The term "drug paraphernalia" means any equipment, products and materials of any kind which are primarily used, intended for use or designed for use by the person in possession of them, ... containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body any controlled substance or marijuana in violation of the provisions of this chapter. It includes, but is not limited to:

* * *

(10) Objects used, intended for use or designed for use in ingesting, inhaling or otherwise introducing marijuana, cocaine, hashish or hashish oil into the human body, such as:

(a) Metal, wooden, acrylic, glass, stone, plastic or ceramic pipes with or without screens, permanent screens, hashish heads or punctured metal bowls;

(b) Water pipes;

(c) Carburetion tubes and devices;

(d) Smoking and carburetion masks;

(e) Roach clips: meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(f) Miniature cocaine spoons and cocaine vials;

(g) Chamber pipes;

(h) Carburetor pipes;

(i) Electric pipes;

(j) Air-driven pipes;

(k) Chillums;

(*l*) Bongs; and

(m) Ice pipes or chillers.

Therefore, to sustain a conviction, the State is required to prove that: (1) the defendant delivered or possessed with the intent to deliver an object; (2) that object is drug paraphernalia; (3) the defendant knew of the drug-related nature of the object; and (4) the defendant knew or reasonably should have known that the object would be used to introduce illegal drugs into the human body.

■ [¶ 22.] The Holways claim that they cannot be guilty because SDCL 22–42A–1 requires those in possession to intend the objects for drug use. They claim that because they did not intend the items for drug use and the undercover officers to whom they sold the objects did not intend or actually use them for drugs, the conviction cannot be sustained. We disagree. The statute identifies drug paraphernalia in the disjunctive. It includes objects "primarily used" for drug use, objects intended for drug use by the person in possession of them, or objects designed for drug use by the person in possession of them. The Holways cannot escape liability by pretending to ignore the most common use of such objects.

[¶ 23.] While the Holways claim that the objects could have been used to smoke tobacco, we agree with the trial court's characterization of the items herein as being "primarily used" to introduce illegal drugs into the human body. The Holways also assert that they did not know of the objects' drug-related nature. But the jury was justifiably incredulous. It is difficult to believe that those who chose to sell such items because they would be "very lucrative," but who first made inquiries to the State's Attorney and the Attorney General to determine how they could escape liability, did not have a clue as to the drug-related and *illegal* nature of such items.

[¶ 24.] Furthermore, liability in this case is not affected by the fact that one individual owned the store and supplied the objects while the other actually made the sales. SDCL 22-3-3 provides that those who intend to promote or facilitate a crime are to be held accountable as a principal to the crime. SDCL 22-42A-2 provides that a court, in determining whether an object is drug paraphernalia, may consider statements by the person in possession of the object, direct or circumstantial evidence of intent, national and local advertising concerning the object's use, the manner in which the object is displayed, the existence or scope of legitimate uses, and expert testimony.

[¶ 25.] Ellie actually sold the items at issue. She gave both Whittle and McCabe the free packages of screens, which are commonly used for smoking marijuana, when they purchased the pipes. She indicated that she recognized a wood dug-out as being an "old standard." Yet, an expert witness testified that it certainly is not an "old standard" for smoking tobacco. When Whittle commented on the possible illegality of selling the items, she pointed to the sign and informed him that she did not want to know about his supposedly "legal intent." Her reply to McCabe's question of whether she had any pipes shaped like police cars indicates that she knew law enforcement would "frown upon" having a pipe, used for smoking marijuana, designed in such a shape.

[¶ 26.] Thomas not only owned the store that the items were sold in, but he was also intricately involved in stocking the items for sale. His statements to Brenner are indicative of his knowledge that the items he wished to sell were legally questionable, at best. The fact that he approved the discount to McCabe indicates he supervised the sales of the items. There was evidence that he displayed the items at issue with many others specifically enumerated within SDCL 22-42A-1(10) as constituting drug paraphernalia. Copies of Cannabis Culture and High Times, magazines advocating drug use, show photographs advertising the very same objects.

[¶ 27.] The facts laid out above give sufficient reason for a jury to believe, beyond a reasonable doubt, that not only were the objects drug paraphernalia, but that Thomas and Ellie knew or reasonably should have known of the objects' drug-related nature. Accepting, as we must, the evidence and the most favorable inferences to be drawn therefrom in favor of the verdict, we do not see that the judgment was in error. Therefore, we affirm the decision of the trial court.

[¶ 28.] SABERS, AMUNDSON and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 29.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.